[No. 11191.   Department Two.   February 16, 1914.]

ALBERT LA FRANCHI *et al.*, *Appellants*, v. THE CITY OF
SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS— IMPROVEMENTS — PETITIONS — SIGNERS.
The provision in art 8, § 11, subd. 2, of Seattle Charter, that the pe-
tition of property owners for an improvement may be signed by an
executor if property stands in the name of the estate, is applicable
to the subsequent provisions of the same section authorizing an
assessment in excess of fifty per cent of the value of the property,
where the petition is signed by three-fourths of the property owners.

SAME—PETITIONS—SIGNERS—HUSBAND AND WIFE.   Where a city
charter provides for a petition for an improvement to be signed by
property owners, according to the transfer books in the office of the
county auditor, the husband alone may sign the petition as the
owner of community property which stands in his name on the
transfer books.

SAME—SIGNERS—EXECUTORS.   Where a city charter authorizes a
property owner's petition for an improvement to be signed by an
executor of an estate, the estate is bound by his signature.

SAME—IMPROVEMENTS—LIMITATIONS—PLANS.   Where a petition
and ordinance for an improvement specified that the street men-
tioned was to be improved by grading and constructing a plank
trestle, in accordance with plans to be prepared by the city engi-
neer, plans cannot be made to materially extend the nature of the
improvement; and where the total assessment was $56,312, the in-
clusion of $8,400, for the construction of approaches at various
streets, is a material change not authorized by the petition; and
an item for the construction of sidewalks is, also, not reasonably in-
cidental to the grading of the street.

SAME—IMPROVEMENTS—ASSESSMENTS—BENEFITS.   Benefits that a
particular piece of property may receive from an improvement are
not measured alone by the physical character or cost of the work in
front of the property; the question being to what extent it is bene-
fited and whether it is assessed proportionately with other prop-
erty.

Appeal from a judgment of the superior court for King
county, Humphries, J., entered January 24, 1913, dismis-

[1]Reported in 138 Pac. 659.

sing appeals from an order of the city council confirming assessment rolls.   Modified.

*Gill, Hoyt & Frye,* for appellants.

*James E. Bradford* and *William B. Allison,* for respondent.

MAIN, J.—This appeal involves the validity of an assessment roll for local improvements.

A few days prior to May, 1911, there was presented to the city of Seattle a petition requesting that First avenue, south, be improved by grading or constructing a plank trestle, as may be necessary, in accordance with the plans and specifications to be prepared by the city engineer.   This petition, so far as here material, was as follows:

"To the honorable board of public works and city council of the city of Seattle:

"We, the undersigned, being the owners of property to be benefited by the improvement herein mentioned, to the aggregate amount of 75% of the special assessment to be levied for such improvement, in fact and according to the transfer books in the office of the county auditor of King county, do respectfully petition and pray that 1st Avenue South, from Oxbow Bridge to Barton street, in the city of Seattle, be improved by grading or constructing a plank trestle, as may be necessary, in accordance with plans to be prepared by the city engineer; provided that where a plank trestle is necessary it shall be not less than eighteen (18) feet in width, and where an earth roadway is necessary it shall not be more than forty-two (42) feet in width; . . ."

On May 19, 1911, the board of public works transmitted the petition to the city council and reported thereto substantially as follows:   The total cost of the improvement; the manner of the assessment to be against the abutting property; the limit of the assessment to be 300 per cent as specified in the petition.   The board of public works further reported that the petition had been signed by more than 75 per cent of the total frontage to be affected by the improvement, and recommended that the work requested by the petition be prosecuted.

On May 29, 1911, the city council passed ordinance No. 27,288, providing for the improvement as specified in the petition. In this ordinance it was provided: "Said improvement to be made in accordance to the plans and specifications prepared under the direction of the city engineer and on file in the office of the department of public works." The plans and specifications were first filed in the office of the board of public works on August 29, 1911.

Thereafter the improvement was prosecuted and completed. An assessment roll was then prepared and notices, as required by law, were given the parties whose properties were affected. September 16, 1912, was fixed as the date when the city council would hear objections to or protests against the confirmation of the roll. On that date, protests were presented by the appellants in this case, and others, setting out a number of objections to the roll. The matter was by the council referred to the street committee for hearing. Thereafter the protestants appeared before the street committee and presented their objections. This committee recommended to the city council that certain property shown on the roll and owned by commercial waterway district No. 1 be eliminated from the assessment roll, and that certain descriptions be amended to show the correct ownership of the property, and that the roll be confirmed.

On November 18, 1912, the committee's report being then before the council, it was, upon motion, adopted, and the roll approved. On November 25, 1912, the roll was approved and confirmed by ordinance. Thereafter appeals were prosecuted by certain of the property owners to the superior court. On January 24, 1913, the court, after hearing, entered a judgment dismissing all the appeals. From that judgment, the present appeals are prosecuted.

It has been stipulated that all of the appeals shall be heard upon the record in the case of A. Oliver McCallister, et ux. v. City of Seattle, and that the judgment entered

by this court in that case shall be entered as to each and all of the other appellants.

The improvement in question was initiated under subdivision 2 of § 11, art. 8, of the city charter. It is there provided:

"There must be presented to the board of public works a written petition setting forth the street or streets, lane or lanes, alley or alleys, squares or places or parts thereof to be improved, the nature of the improvement, the mode of payment and the fact that the signers are the owners of the property to be benefited by such improvement, to the aggregate amount of a majority of the special assessment to be levied therefor according to the transfer books in the office of the county auditor. If any such property stands in the name of a deceased person or any person for whom a guardian has been appointed, the signature of the executor, administrator or guardian, as the case may be, shall be equal to the signature of the owner of the property on such petition."

It will be noted that it is therein provided that the owners of the property which may be benefited by the improvement are to be ascertained from the transfer books in the office of the county auditor, and that, where property stands in the name of a deceased person, the executor or administrator shall have power to sign the petition. Subsequent provisions of the same subdivision provide for a petition to be signed by three-fourths of the property to be assessed for the improvement when the cost thereof shall be greater than fifty per cent of the assessed value.

It is argued that the provision of this subdivision quoted does not apply when the improvement is initiated by petition of three-fourths of the property to be assessed. But we think this contention cannot be sustained. Reading the entire subdivision, it would seem that the correct construction is that it was the intention of the charter makers that the provision with reference to the qualifications for signing the petition, as specified in the excerpt quoted, should apply

when the improvement is petitioned for by the owners of three-fourths of the property to be assessed.

In the present case, certain of the property to be affected by the improvement was community property. The petition was signed by the husbands but not by the wives. On the transfer books in the office of the county auditor the title to the property stood in the names of the husbands only. The charter might have conferred power upon the city council to order the improvement without a petition. It follows, therefore, that when providing that the improvement should be initiated by petition, the charter could define who should be the owners for the purpose of executing the petition.

It is also claimed that the petition was not executed in a manner to bind the property owned by the Daniel Snyder Estate. The charter provides that, in such a case, the signature of the executor or administrator shall be equivalent to the signature of the owner. The petition here involved was signed by the executor and trustee of the Daniel Snyder Estate, as well as by each of the chief beneficiaries under the will of the deceased. Whether, in the absence of charter provision determining who shall be the owners for the purpose of execution of the petition, the initiating of a local improvement by petition would be considered an incumbrance such as to require the signature of the wife when community property is involved, need not now be determined. As stated above, the charter determines who shall be considered the owners for the purpose of executing the petition.

The city charter contains a provision that the action and decision of the city council as to all matters passed upon by it in relation to the rejection or granting of a petition for a local improvement shall be final and conclusive. This provision was carried into the codification of the local improvement law as it is found in chapter 98 of the Laws of 1911, p. 441 (3 Rem. & Bal. Code, § 7892-1 *et seq.*). At the time the improvement in question was initiated, that law had not become effective. In view of the conclusion we have already

reached on the effect of the charter defining who shall be considered owners for the purpose of signing the petition, it is not necessary to consider what might be the effect of a finding of the city council, under the charter provision, that the petition had been executed by the owners of three-fourths of the property to be affected. To do so would be, in a measure, to construe the statutory provision prior to the time when the question might be raised thereunder. In this case, we do not desire to prejudge that question when it shall arise under the statute.

The next question is whether the expense of certain items which were carried into the assessment roll were contemplated by the petition and ordinance as a part of the improvement petitioned for. The charter requires that the petition shall set forth "the nature of the improvement." In this case, the petition specified that the street mentioned "be improved by grading or constructing a plank trestle as may be necessary in accordance with plans to be prepared by the city engineer." The language of the ordinance followed that of the petition. The apparent purpose of the petition was to secure the improvement of the street mentioned by either grading or constructing a plank trestle, as might be necessary, in accordance with plans to be prepared by the city engineer. These plans could not go beyond the purpose of the petition and ordinance and what was reasonably incidental thereto. In other words, the fact that the petition and ordinance specified that the improvement was to be made in accordance with plans to be prepared by the city engineer did not authorize in the plans and specifications so prepared an extension of the purpose as specified in the petition and ordinance. The plans and specifications there contemplated are for the grading or constructing a plank trestle as might be necessary, upon the street in question. By the plans and specifications so prepared, the nature of the improvement could not be changed. In Hamilton, Law of Special Assessments, § 392, it is said:

"On general principles, however, the ordinance being the sole authority for the construction of a public improvement to be paid for by special assessment, the municipal authorities have no right to change the nature, locality, character or description of the improvement as prescribed in the ordinance."

The improvement called for in the petition extended from what was known as Oxbow bridge to Barton street, the southern boundary of the city. The appellants claim the following items, among others, were improperly included in the assessment roll: 23,000 yds. of earth excavated from Barton street at 29c per yd., $6,800; temporary wood walks, $289; building approaches, $1,600.

The $6,800 item for excavation in Barton street was for the purpose of constructing an approach to the street which terminated at that point. The other item of building approaches, amounting to $1,600, consisted of constructing approaches at the intersecting streets. The question, then, is whether a petition calling for the improvement of a street by grading or constructing a plank trestle includes approaches to the street so constructed. The total amount of the assessment roll was $56,312.76. The amount included therein for the construction of the approach at Barton street and other streets was $8,400, practically one-seventh of the total cost. This is a material item. While there doubtless are situations where the construction of an approach would be reasonably incidental to the improvement of a street by grading or the construction of a trestle, we think the approaches here in question constituted such a material part of the improvement that they could not be included in the assessment roll unless they were covered by the petition. Neither can the item for the construction of a sidewalk be held to be reasonably incidental to the grading of a street. In *McAllister v. Tacoma*, 9 Wash. 272, 37 Pac. 447, 658, it was held, that a petition and resolution to improve a street by paving would

not include sidewalks, even though the specifications covered such.

Without reviewing in detail the other items to which objection has been made, we think, they are reasonably incidental to the improvement of the street by grading or the construction of a trestle. In *Spokane v. Browne*, 8 Wash. 317, 36 Pac. 26, it was held that an ordinance which provided that a certain street should be graded included curbing. Speaking of the objections there interposed to the assessment roll, it was said:

"These objections are untenable, for we think the character of the improvements made, viz., 'grading, grubbing, guttering and curbing Washington street,' was sufficiently described by the use of the word 'graded' in the ordinance. . . . ."

It is charged that the assessment was not made on the basis of benefits, and therefore should be set aside. Subdivision 3, of article 11, of the charter, requires that all property, as nearly as may be, shall be assessed according to the benefits. In the assessment roll, the property abutting upon the improvement is assessed equal areas in like amounts. This may or may not be in accordance with the benefits, but must depend upon the facts and circumstances surrounding the particular case. The witnesses called on behalf of the appellants testified that the property abutting upon the portion of the improvement where a trestle had been constructed was not benefited to the same extent as was the property that abutted upon other portions of the improvement. The witnesses called to sustain the roll testified that the assessment had been made in accordance with the benefits, and that the property abutting upon the trestle was equally benefited with the property that did not so abut. A benefit that a particular piece of property may receive by reason of the improvement is not measured alone by the physical character or cost of that portion of the improvement upon which the property abuts. The question is, to what extent

is the particular tract or property benefited by the entire improvement, and is it assessed proportionately with the other property included within the assessment district. From a consideration of the entire record, we are unable to say that the properties of the appellants respectively are not benefited to the same extent as other properties of like areas throughout the district.

Our conclusion is that the sums included in the assessment for approaches and sidewalks are not properly included in the assessment roll. These items together make a total of $8,689. The appellants are entitled to a *pro rata* reduction on account of these items erroneously included. In other words, the assessment of the appellants upon the roll should be reduced to a sum to correspond with what it would have been had not these erroneous items been included in the roll.

Other objections are urged, but we think there is not sufficient merit in them to justify the setting aside of the roll and directing a reassessment. The cause will be remanded to the superior court with directions to modify the roll as herein indicated, and thereupon to enter a judgment confirming and approving the same.

The appellants will recover costs in this court.

CROW, C. J., ELLIS, FULLERTON, and MORRIS, JJ., concur.