[No. 15902.   Department One.   September 8, 1920.]

*In the Matter of the Condemnation of* WEST MARGINAL WAY, SEATTLE.

THE CITY OF SEATTLE, *Respondent*, v. HARRIET L. PEABODY *et al., Appellants.*[1]

MUNICIPAL CORPORATIONS (267-1)—IMPROVEMENTS—ASSESSMENTS— BENEFITS—REVIEW.  The report of eminent domain commissioners as to benefits to property from the establishment of a street, fortified by the findings and judgment of the trial court in confirmation thereof, will not be disturbed unless the evidence so clearly preponderates as to indicate arbitrariness and manifest oppression.

SAME (267-3)—ASSESSMENTS—REVIEW—ARBITRARY ACTION.  While ordinarily the question of benefits to property from a public improvement is one of fact, the finding of which by the eminent domain commissioners will not be disturbed except for arbitrariness or manifest abuse, yet when it is obvious from the physical condition of the property, its locality, environment and character of the improvement, that an assessment should not be laid upon the property for the purpose, and that to do so would amount to an exaction from the property owner which he should not be obliged to make as a special assessment, the courts will interfere to prevent a consummation of the injustice.

SAME (241)—ASSESSMENTS—SPECULATIVE OR INTENDED BENEFITS.  The eminent domain commissioners in fixing the amount of assessments or determining the question of benefits to property from a local improvement should take into consideration the present as well as the future use to which the property is reasonably adaptable, yet the benefit must be a present one and immediately accruing from the improvement in question, and landowners cannot be assessed for speculative or intended benefits which may never be realized.

SAME (241, 267-2)—ASSESSMENTS—BENEFITS—REMOTE OR SPECULATIVE BENEFITS—EVIDENCE—SUFFICIENCY.  An assessment on prop-

[1]Reported in 192 Pac. 961.

erty for benefits from a proposed street is invalid as resting upon a fundamentally wrong basis, where the property, located on an island, is separated from the proposed street by a navigable water-way subject to the control of the Federal government and by privately owned property abutting thereon, and the street can only be reached by a bridge constructed over the waterway at large expense and then on through the privately owned property, the plans for which are not contemplated at the present time, nor any assurance of such in the reasonably near future.

Appeal from a judgment of the superior court for King county, Frater, J., entered September 8, 1919, confirming an assessment for a local improvement, after a hearing before the court. Reversed.

*Bronson, Robinson & Jones,* for appellants.

*Walter F. Meier, George A. Meagher,* and *Charles T. Donworth,* for respondent.

MITCHELL, J.—An appeal has been taken by certain property owners from a judgment of the superior court confirming assessments upon their property, made by a board of eminent domain commissioners to meet the costs of a local improvement in laying off, opening, extending and establishing a street known as West Marginal Way, in the city of Seattle.

Appellants' property, known as the Kellogg Acre Tracts, consists of about thirty acres, and is entirely surrounded by the navigable waters of the Duwamish river. Between the island and the west bank of the stream, the waterway varies from two hundred fifty to six hundred feet in width, and is subject to the ebb and flow of the tide. West Marginal Way runs northerly and southerly, is located on the west side of the river, and, in a general way, parallels it for a considerable distance both north and south of the island, being separated from the waterway west of the island by privately owned property, varying in width, according

to the widening of the river, from one hundred to five hundred feet, until it reaches a point near the north end of the island, where, on account of the semi-circular form of the waterway, the street is still further separated from the waterway by property platted into lots and blocks. The island is in no way accessible except by the waterways on each side; nor is there in contemplation at this time the establishment of any suitable bridge or other means to connect the island with West Marginal Way or any of the streets crossing it. It appears that some time ago preliminary steps, whether private or official is not shown, were taken to have the waterway west of the island vacated, but the project met with such a storm of protest from the owners of property abutting on the west front of the waterway that it was abandoned.

The only objection made, and the sole question presented by the appellants, Harriet L. Peabody, Rosemary McDougall and Annie A. McDougall, is that their property will receive no special benefit from the establishment of the street and should not be assessed in any sum whatever for the costs and expenses of improvement. It is the well established rule in this state, and generally, that the report of the commissioners, fortified by the findings and judgment of the trial court in confirmation thereof, will not be disturbed unless the evidence so clearly preponderates as to indicate arbitrariness and manifest oppression. *In re Third, Fourth & Fifth Avenues, Seattle,* 55 Wash. 519, 104 Pac. 799.

"It is also elementary that the whole theory of special assessment is based on the doctrine that the property against which it is levied derives some special benefit from the local improvement." *Northern Pac. R. Co. v. Seattle,* 46 Wash. 674, 91 Pac. 244, 123 Am. St. 955, 12 L. R. A. (N. S.) 121.

It is defensible only on that theory. *East Hoquiam Co. v. Hoquiam,* 90 Wash. 210, 155 Pac. 754.

It is the judgment and theory of the commissioners, and other witnesses for the city, substantially as testified to by one of the commissioners, that the establishing of West Marginal Way "accomplishes something in my estimation to develop or make possible for future development that property lying west of the Duwamish Waterway (the waterway on the east side of the island), coupling together the entire distance from the extreme north end where it starts in at First avenue south, making it possible for a highway to be operated for the development of railway spurs, or, if you please, street railway spurs." Their testimony frankly admits the proposed street will be of no use to appellants' property unless the waterway west of the island is bridged at some place, not located, thence on by some way, undefined, to West Marginal Way. It is further assumed that a bridge will be built at some future date when the Kellogg Acre Tracts, now unimproved, shall have become the site of an industrial plant, justifying the private expense of a way out to West Marginal Way. But nothing of this sort is planned, contemplated or projected at the present time at either public or private expense; nor is there any assumption or assurance thereof in the reasonably near future.

Oftener than otherwise, it is difficult to clearly decide upon the dividing line between property that is specially benefited and that which is not, by the establishment of a new public improvement. Ordinarily, the question is one of fact, hence the respect so nearly approaching verity with which the courts endow the findings and conclusions of eminent domain commissioners. There is, however, a dividing line, and when it is plainly obvious from the physical condition of the

property involved, its localty, environment, and the character of the improvement, that an assessment ought not to be laid upon certain property for the purpose, and that to do so would amount to an exaction from the property owner of a contribution he should not be obliged to make as a special assessment, the courts will interfere to prevent a consummation of the injustice. 25 R. C. L. 58, pp. 58 and 59. It is true that in fixing the amount of an assessment, or in determining if there would be a benefit to the property, the eminent domain commissioners should take into consideration the present as well as the future use to which the property is reasonably adaptable. *In re West Wheeler Street,* 97 Wash. 669, 167 Pac. 41. Yet, "the special and peculiar benefit which will legalize an assessment for the expense of a local improvement must be a present benefit immediately accruing from the construction of the work in question," and "landowners cannot be assessed for intended benefits which may never be realized; mere speculative benefits are not, in reality, benefits." *State ex rel. Kellogg v. Elizabeth,* 40 N. J. Law 274; *State ex rel. New Jersey R. & T. Co. v. Elizabeth,* 8 Vroom (37 N. J. L.) 330; *In re Drainage Pequest River,* 10 Vroom (39 N. J. L.) 433; *Holdom v. Chicago,* 169 Ill. 109, 48 N. E. 164; *Hutt v. Chicago,* 132 Ill. 353, 23 N. E. 1010, 28 Cyc. (Municipal Corporations) p. 1129. It is contended by the city that this case presents no new questions to this court and that the propositions involved have been passed upon by us many times. On the contrary, an examination of the many cases of this court, cited by the respondent, shows no case where the situation was similar to this one. The case of *Hutt v. Chicago, supra,* very nearly meets the present situation. We adopt the views therein expressed, and for the sake of clearness quote rather fully, as follows:

''The commissioners who were appointed to assess benefits to property owners made the assessment on the theory that a bridge would be constructed by the city across the river, and all the witnesses called by the city to sustain the assessment predicated their judgment of benefits to property upon the hypothesis that a bridge would be constructed across the river, as shown by their evidence. F. C. Vierling says 'that the benefits that I have testified to here, all depend upon the erection of a bridge.' E. C. Huling: 'I base the benefits largely from the fact that a bridge would be built.' John Wain bases his idea of benefits on the expectation of the street being opened all the way by a bridge. E. A. Cummings states that his testimony is based on the expectation that a bridge will be built across the river. John C. McCord states that in order to make the benefit appreciable there will have to be a bridge. William Kaspar says: 'A bridge is necessary to this improvement. If there is no bridge there will be no benefit.' The witnesses called by the objectors agree with those introduced on behalf of the city, that the improvement made by the proposed extension of the street will be of no benefit to the land owners assessed unless a bridge should be constructed across the river. Indeed, upon this point there was no substantial conflict or disagreement in the evidence. Not only in the admission of evidence, but in the instructions, the theory seemed to be adopted that the erection of a bridge in the future might be considered in estimating benefits. . . . The court also refused the following instruction: 'The jury are instructed that benefits by the proposed improvement cannot be predicated upon the uncertainties of the future action of the city council in providing for the construction and building of .a bridge at Canal street, but the benefits in this case must flow directly from the improvement proposed, without reference to such action of the city council in reference to the construction of said bridge.' Also the following was refused: 'If the jury believe, from the evidence, that the premises of the objectors will not be benefited by the proposed improvement unless a bridge should be constructed upon the line of

such improvement across the South Branch of the Chicago river at Canal street, then their verdict in this case should be for the objectors.' Other instructions of a similar character were refused. Indeed, it is apparent, from the record, that the case was presented to the jury, by the admission of evidence and in the instructions, upon the theory, that although the ordinance made no provision for a bridge across Chicago river, yet the fact that at some future time a bridge might be erected, might be taken into consideration in estimating the benefits which would be received by the land owners by the proposed improvement, and if this theory was erroneous, the judgment will have to be reversed. It is said, however, in the argument of counsel for the city, that the probable and natural consequences of an improvement ordered may be, and almost uniformly are, taken into consideration in determining the effect of the improvement on the values of private property. We find no fault with this position. Whatever may be the effect on the market value of property, if the act ordered to be done is a proper subject for consideration, all natural and probable results to flow from the improvement ordered may properly be considered in estimating benefits. But the trouble here is, no bridge has ever been ordered. The improvement ordered is the extension of a street, without any provision whatever being made for the erection of a bridge; and if it may be anticipated that at some future time a bridge will be erected by the city, and thus benefits flow to property owners, upon the same principle you may anticipate that some other improvement may be made on the line of the street which will also be of benefit to property owners, and assess that anticipated benefit against their property. We do not think the future action of the city of Chicago in ordering additional improvements can be regarded either as a probable or natural consequence to flow from the improvement ordered in this case. The ordinance here provides for the extension of a street. The extension requires the taking of land, and the benefits to be assessed must be confined to the improvement ordered. Section 24, of article 9, makes it the duty of the commis-

sioners, in making the assessment, to apportion and assess the amount found to be of benefit to the property, upon the several lots, blocks and tracts of land, in the proportion in which they will be severally benefited by such improvement, provided no lot or tract shall be assessed at a greater amount than it will be actually benefited. We know of no principle under which it can be held that the language 'actually benefited' can refer to improvements not ordered, and that may never be ordered. The lands of appellants were assessed benefits derived from the erection of a bridge across the Chicago river which may never be built—a bridge that has not been ordered, and may never be ordered. We do not think such an assessment was contemplated by the statute.''

In the case of *Dickson v. Racine,* 65 Wis. 306, 27 N. W. 58, written earlier than the *Hutt* case, a different result was reached. It was fully warranted, however, for the court said:

''The reason for opening the street was to make an approach to a bridge, the construction of which was contemplated by the city in the near future. It would seem absurd to say that such fact should have no effect in estimating benefits.''

It is to be observed that, in the Illinois case, the street ran to the point where the bridge would be built, if ever, and in the Wisconsin case, to the place where the city contemplated building a bridge in the near future.

In the present case, the street in no way suggests a bridge or viaduct over navigable waters to appellants' property within the contemplation of the city in the near future, or at all.

There is abundant evidence in the record on the part of appellants to show the improvement will not specially benefit this property. But, wholly independent of that evidence, we are satisfied it cannot reach appel-

lants' property with any special benefits, and that the assessment rests upon a basis fundamentally wrong, the enforcement of which would result in oppression. We reach this conclusion as a matter of law. Appellants' property is still isolated from, and inaccessible to, the street, which could not be reached except by some means, estimated to cost a very large sum of money, over a navigable waterway subject to the control and pleasure of the Federal government, and thence on through property now held in private ownership.

Reversed, with directions to enter a judgment canceling all assessments against appellants' property.

HOLCOMB, C. J., PARKER, and TOLMAN, JJ., concur.