[No. 56368–3.   En Banc.   February 15, 1990.]

ATHENA S. DOOLITTLE, *Respondent,* v. THE CITY OF EVERETT, *Appellant.*

*Mills & Cogan,* by *Blair B. Burroughs,* for appellant.

*Rodgers & Deutsch* and *S. Michael Rodgers,* for respondent.

BRACHTENBACH, J.—Respondent Doolittle (hereinafter Owner) is the owner of four contiguous lots. Three of the lots are improved and used separately from the fourth lot which is developed and used for a separate commercial use. To assess for special benefits in a local improvement district (LID), the City of Everett (hereinafter City) treated the four lots as a single parcel and assessed benefits on the basis of the potential highest and best use of the property as a combined parcel of all lots, with all improvements removed. The Owner protested the proposed assessment as to the fourth lot, improved and used as a separate parcel. The assessment was confirmed.

The Owner appealed to superior court. That court found that the fourth lot had a separate commercial use and that no portion of that lot was used in conjunction with the other three lots. The court invalidated the assessment against all the lots and remanded to the Everett City Council (hereinafter Council) for reassessment of the three lots as one parcel and the fourth lot as a separate parcel. We affirm.

The issue is: When assessing land for local improvements, are the special benefits to contiguous lots owned by the same owner to be determined based on potential highest and best use of the lots as a single unit where the lots have actually been improved and used separately? The underlying question is how to determine what is the parcel of land against which an LID assessment may be made when contiguous parcels are in the same ownership,[1] but have been improved and are being used separately.

---

[1]We necessarily exclude consideration of ownerships which are not identical. *See generally cf.* 4A J. Sackman, *Nichols on Eminent Domain* § 14.26[2] (1985) (discussing unity of ownership).

We hold that the assessment is founded upon a fundamentally wrong basis, which is a statutory ground for annulling an assessment. RCW 35.44.250. The basis of our holding is that the City erred in applying "highest and best use" to the Owner's four contiguous lots, and in treating the four platted lots as a single parcel without first determining whether the four lots constitute a single parcel. "Highest and best use" may be applied, but only to the appropriate parcel as determined by applicable legal principles. The City's expert appraisers failed to consider whether the four lots constituted a single "larger parcel" or separate parcels before applying their highest and best use evaluation. In short, the appraisal analysis was founded on a fundamentally wrong basis because there was never any determination of the appropriate parcel to which the highest and best use analysis should apply.

The Owner's four contiguous lots are within the City of Everett.[2] Lots 10, 11, and 12 have a single commercial building on them, including a convenience store and two smaller rental units. The building was built in 1945, with additions in 1954 and 1979. These lots are located at the corner of Evergreen Way and Olivia Park Road, with 180 frontage feet on Evergreen Way and 263 frontage feet on Olivia Park Road. To the south and southwest of lots 10, 11, and 12 lies lot 14. Lot 14 has a 2–story prefabricated commercial building on it, containing an auto body repair shop, a gun shop, and other commercial tenants. This building was built in 1980. Lot 14 has 43 frontage feet on Evergreen Way. Access to lot 14 has been possible from Evergreen Way and from Olivia Park Road across the back of lots 10, 11, and 12.

The City created Local Improvement District 713 (LID 713) to widen and improve Evergreen Way. The City computed the Owner's proposed final assessment of $103,186

---

[2] A site plan showing the lots and their size and location is reproduced and attached as an appendix.

based on potential highest and best use of the four lots *used as a single tract.*

The Owner protested the amount of her proposed assessment at the hearing held to confirm the final assessment roll. She maintained that as a matter of law lot 14 must be considered as a separate and distinct appraisal unit from lots 10, 11, and 12. The Owner did not protest assessment of lots 10, 11, and 12 as a single unit, in light of the single commercial building improving those lots. She argued, however, that lot 14 must be considered separately. Her appraiser testified that lot 14 must be appraised separately from lots 10, 11, and 12 because they had always been used as separate parcels and were separately improved. Because lot 14 is mainly an interior lot with only 43 feet abutting Evergreen Way, the appraiser testified, this lot was not benefited from the intersection improvements at Evergreen Way and Olivia Park Road. Instead, the appraiser said, the lot was benefited only in value equal to the cost of the curbs, gutters, and sidewalks along the 43 feet.

Two appraisers testified for the City. One testified that evolving demand in the area was for reasonably large tracts to be used as a single entity or economic unit. The second appraiser had submitted a full appraisal for consideration by the Council. He testified that the typical investor would look at the lots as a single parcel, and that the highest and best use for the property would be as a planned retail/ commercial shopping complex. He based his opinion on comparative sales showing demand for similar property, the fact that the building on lot 14 is prefabricated and capable of being moved, the fact that the building on lots 10, 11, and 12 was nearing the end of its useful life, and his view that the land was underutilized. The $103,186 assessment on all four lots resulted from projection of special benefits to lot 14 at the same square foot rate as the other three lots.

The Council confirmed the special benefit assessment. The Owner appealed to superior court pursuant to RCW

35.44.250. The court found that lot 14 has a separate commercial use and a separate commercial building from lots 10, 11, and 12, and that no portion of lot 14 is used in conjunction with the commercial uses on lots 10, 11, and 12. The court held that lots 10, 11, and 12 constitute a separate and distinct appraisal unit from lot 14, and remanded the matter for reappraisal. The City appealed to the Court of Appeals; we accepted certification.

General principles respecting special assessments and appellate review of special assessment proceedings apply. The amount of the special benefit accruing to property as a result of a local improvement is the difference between the fair market value of the property immediately after the special benefits have accrued and the fair market value of the property before the special benefits have accrued. *In re Schmitz,* 44 Wn.2d 429, 434, 268 P.2d 436 (1954). Property cannot be relieved from the burden of a local improvement district assessment simply because the owner devotes it to a use which may not be specially benefited by the local improvement. *In re Jones,* 52 Wn.2d 143, 146, 324 P.2d 259 (1958). Present use should be considered, as well as future use to which the property is reasonably well adapted. *In re Jones,* at 146; *In re West Marginal Way,* 112 Wash. 418, 422, 192 P. 961 (1920).

In reviewing special assessments, the following rules apply:

Review is limited to the record of proceedings before the City Council. *Abbenhaus v. Yakima,* 89 Wn.2d 855, 859, 576 P.2d 888 (1978); *Smith v. Skagit Cy.,* 75 Wn.2d 715, 718–19, 453 P.2d 832 (1969). The reviewing court looks at the propriety of the process and does not undertake an independent evaluation of the merits. *Time Oil Co. v. Port Angeles,* 42 Wn. App. 473, 479, 712 P.2d 311 (1985); *Abbenhaus,* at 859. The action of the City Council is presumed legal and proper; the party challenging the assessment has the burden of proving its incorrectness. *Abbenhaus,* at 860–61. Further, an appellate court "presume[s] that an improvement is a benefit; that an assessment is no greater than the benefit; that an assessment is equal or ratable to an assessment upon other property similarly situated; and that the assessment is fair.'" *Abbenhaus,* at 861, quoting

Trautman, *Assessments in Washington,* 40 Wash. L. Rev. 100, 118 (1965).

. . . .

A final assessment roll will be upheld unless it stands on a fundamentally wrong basis or the assessing body acts arbitrarily or capriciously. *See Abbenhaus,* at 858; Trautman, at 128–30.

*Bellevue Assocs. v. Bellevue,* 108 Wn.2d 671, 674–75, 741 P.2d 993 (1987).

RCW 35.43.040 provides authority generally for ordering local improvements and for levying and collecting special assessments "on property specially benefited thereby . . .". RCW 35.44.010 provides that the cost and expense of the local improvement "shall be assessed upon all the property in accordance with the special benefits conferred thereon." The statutes do not define what is meant by the term "property."

Several subsequent statutes in the LID assessments procedures chapter, RCW 35.44, refer to assessing "each separate lot, tract, parcel of land or other property . . .." RCW 35.44.030, .050. *See also* RCW 35.44.040(3), (3)(1) ("each lot, tract, or parcel of land"). RCW 35.44.090 provides for notice of the hearing on the assessment roll to be sent to the owner "for each item of property described on the list." These statutes, too, are not helpful in determining what constitutes the parcel to be assessed under the facts here.

■ The parties propose that in deciding whether to combine separately platted lots into one tract for the purpose of determining special benefits, we should apply the so–called larger parcel test. The larger parcel test has been applied by Washington and other courts in eminent domain cases involving the question whether land constitutes a single tract for purposes of determining damages and offsetting benefits. *State v. McDonald,* 98 Wn.2d 521, 656 P.2d 1043 (1983); *Idaho & W. Ry. v. Coey,* 73 Wash. 291, 295, 131 P. 810 (1913); *Sultan Water & Power Co. v. Weyerhaeuser Timber Co.,* 31 Wash. 558, 561, 72 P. 114 (1903); *State v. Lacey,* 8 Wn. App. 542, 507 P.2d 1206 (1973), *aff'd,* 84 Wn.2d 33, 524 P.2d 1351 (1974). Under the larger parcel

test, three elements are required to establish a single tract: unity of ownership; unity of use; and contiguity. *McDonald,* at 526; *Lacey,* at 543. Whether the larger parcel test has been satisfied is a question of fact for the trier of fact, unless reasonable minds could not differ on the matter. *McDonald,* at 526; *Lacey,* at 546. There is no dispute that the Owner owns all four lots, nor that the lots are contiguous. The question as framed by the parties is whether the unity of use element is satisfied so that all four lots can be considered as one tract.

In deciding whether the unity of use test is met, the City argues that potential future use of the parcels as one tract should be considered. The City then reasons that because expert testimony was presented as to possible future use of the lots as one unified tract, the Council's assessment must be upheld, because the appellate court's function is not to reexamine the merits of the assessment.

The Owner maintains, in contrast, that the unity of use question depends upon actual, present use of the land. Only after it is determined that the unity of use requirement is satisfied and therefore that two parcels should be treated as one tract, the Owner argues, should future highest and best use to which the property is adaptable be considered in deciding the amount of special benefits accrued to the land. The Owner reasons that because the only testimony regarding present use of the land establishes that lot 14 is actually put to separate use from the other lots, reasonable minds could not differ as to whether lot 14 is used together with the other lots, *i.e.,* there is no question of fact on this issue. Therefore, as a matter of law lot 14 cannot be considered to be part of a larger parcel when determining the extent to which it is specially benefited.

The parties have not cited any cases expressly applying the larger parcel test in the context of special assessments. The City reasons, and the Owner evidently agrees, that language in *In re Queen Anne Blvd.,* 77 Wash. 91, 137 P. 435 (1913), indicates that the same test should apply here as applies to eminent domain cases. There, the court

observed that the question whether parcels constitute separate tracts or one tract "arise[s] in the levying of general taxes, special assessments, and in the determination of damages and benefits in eminent domain proceedings." *In re Queen Anne Blvd., supra* at 105.

The City also cites *State Roads Comm'n v. Smith,* 224 Md. 537, 168 A.2d 705 (1961), where the court reasoned that although it is generally the landowner who argues for unitary use in eminent domain proceedings in order to recover for damages to the remainder after some land is taken, the single unit rule (larger parcel test) should apply as well where the condemning authority seeks to establish that the remainder of a tract has been benefited by the local improvement for which some of the land has been taken, in order to offset the benefits against compensation due. The reason the issue is important in cases like *Smith* is that when land is taken for a public use the landowner is not entitled to compensation for injury to other separate and independent parcels which results from the taking. *State v. McDonald,* 98 Wn.2d 521, 525, 656 P.2d 1043 (1983); 4A J. Sackman, *Nichols on Eminent Domain* § 14.25, at 14–633 (1985). However, if contiguous parcels in single ownership constitute one tract, and one parcel is taken, the owner may recover for damages to the remainder and benefits may also be ascertained based on the larger parcel. *McDonald,* at 525–26; 4A J. Sackman § 14.25, at 14–639.

We agree that the larger parcel test is helpful in deciding the question before us. Although eminent domain and special assessments are not the same, and therefore it is important not to superimpose eminent domain law on special assessment law, the similarity of the benefits analysis in the two proceedings indicates use of the larger parcel test is appropriate here.

Though, as noted, the parties have not cited special assessment cases expressly applying the 3–part larger parcel test, the unitary use doctrine has been applied in special assessment cases in other states. For example, in a number

of cases the courts have held that where separate lots have actually been used by the owner as one unit, the lots are assessable as one parcel. *See, e.g., Vaughn v. Williamsburg,* 245 Ky. 339, 53 S.W.2d 690 (1932); *Mound City ex rel. Reinert Bros. Constr. Co. v. Shields,* 220 Mo. App. 798, 278 S.W. 798 (1926); *Knuth v. Board of Sewer Comm'rs,* 91 R.I. 164, 162 A.2d 278 (1960). Where, however, special assessments for street improvements were chargeable against the adjoining property, only the lot actually adjoining the street was assessable despite common ownership of lots contiguous to that lot, where there was no evidence that the owners had disregarded lot lines and treated all the lots as one unit. *Barber Asphalt Paving Co. v. Peck,* 186 Mo. 506, 85 S.W. 387 (1905).

Similarly, where a tract of land was used as a homestead, and thereafter the owner voluntarily segregated the tract by constructing an apartment house on part of the tract, with the homestead and the apartment house divided by a driveway, it was held that the land had become separate units for purposes of determining what was "abutting property" subject to special assessments for street improvements. *Uvalde Rock Asphalt Co. v. Warren,* 127 Tex. 137, 91 S.W.2d 321, 104 A.L.R. 1043 (1936).

These cases demonstrate the general rule that each lot, piece or parcel of land should be assessed separately. *See generally* 14 E. McQuillin, *Municipal Corporations* § 38.116 (3d ed. 1987). A different rule applies where the owner has actually combined several lots and put them to a unified use; in this event the lots may be considered as one parcel. The latter rule has been codified in Illinois. Ill. Ann. Stat. ch. 24, § 9–2–47 (Smith–Hurd 1989) (expressly providing that a single assessment may be made against several lots or parcels if they are owned and improved as one parcel).

Although the out–of–state cases cited above appear to support the Owner in this case, the general rules stated in them are subject to a wide array of applications, as research shows. Moreover, the law in any jurisdiction is heavily

dependent on the particular statutes in the jurisdiction, and the interpretation given the statutes by the courts. Further, in deciding what constitutes unitary use, courts applying the larger parcel test in eminent domain cases do not agree on the formulation of the unity of use test, and have in fact used a wide variety of analyses in applying it. In *Division of Admin., State Dep't of Transp. v. Jirik,* 471 So. 2d 549 (Fla. Dist. Ct. App. 1985), *approved,* 498 So. 2d 1253 (Fla. 1986), a case involving land condemnation, the court listed cases in which courts used the following factors in assessing the unity of use requirement: (1) whether the parcels are contiguous; (2) legal divisions, such as those created by platting; (3) the intent of the owner; (4) the adaptability of the property; (5) the dependence between parcels; (6) the "highest and best use" of the property; (7) zoning; (8) the appearance of the land; (9) the actual use of the land; and (10) the possibility of tracts being used in combination in the reasonably near future.

The City, of course, urges that in deciding the unity of use question we consider the highest and best use based on future use of the lots in combination for a planned retail/ commercial shopping complex. The City relies in part, for example, upon *United States v. 105.40 Acres of Land,* 471 F.2d 207 (7th Cir. 1972), where the court held that the owner of two unimproved parcels of land was entitled to present evidence that condemned land parcels were con- vertible to a more profitable use, that there was a reason- able probability that the parcels would be used together in the reasonably near future, and that they should be consid- ered as part of a single tract for purposes of determining severance damages to other property remaining after the parcels were taken. *105.40 Acres,* at 211–12. The court in *105.40 Acres* relied on statements by the United States Supreme Court that in determining just compensation in takings cases, the amount to be paid does not depend only on the use to which the landowner has put his land, but also depends upon uses for which it is suitable; that the highest and most profitable use for which the property is

adaptable should be considered; and that the fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is "reasonably sufficient" to affect market value. *105.40 Acres,* at 210–11 (quoting *Olson v. United States,* 292 U.S. 246, 255–56, 78 L. Ed. 1236, 54 S. Ct. 704 (1934)).

However, the view in *105.40 Acres* is by no means universally agreed upon. The Ninth Circuit, for example, has reached a different result. That court, in deciding whether parcels of desert land were one tract such that severance damages to the remainder were awardable upon condemnation of the land, stated that a two–fold test is applicable. First, is the parcel which is purported to be severed one part of an integral whole which includes the other parcel or parcels actually condemned, and second, was the value of the severed portion decreased? *Cole Inv. Co. v. United States,* 258 F.2d 203, 204 (9th Cir. 1958). The court rejected the argument that planned integrated use could be considered, and held that actual unified use of the parcels must be shown. *Cole Inv. Co.,* at 205. *Accord, United States v. Easements Upon 104.09 Acres of Land,* 442 F. Supp. 926 (E.D. Wash. 1977). In *104.09 Acres,* at 928, in following the Ninth Circuit approach, the court said that the Seventh Circuit decision was based upon an "unfortunate mingling of . . . legal principles." The court explained:

> In a condemnation action the highest and best use of a tract of land has been used to prove appropriate elements of a defendant's compensation. In contrast, the issue of whether a tract should be considered as a part of the whole has traditionally been determined by the unity of the parcel's use.

*104.09 Acres,* at 928.

Similarly, the court explained in *M&R Inv. Co. v. State,* 103 Nev. 445, 744 P.2d 531 (1987) that in determining whether to consider a parcel as part of a larger tract, two doctrines may be involved in a condemnation case. The larger parcel test is applied in deciding whether a parcel is part of a larger tract, while the rule of joinder is a theory

involving the prospect of joining separate parcels. The rule of joinder is appropriate in determining the amount of damages to property, but has no bearing, the court in *M&R Inv. Co.* said, on the initial question whether severance damages were awardable. *M&R Inv. Co.,* at 535. In other words, the rule of joinder is applied to determine the amount of damages to property condemned or to property remaining where severance damages are concerned, but the theory does not resolve the initial question whether a particular parcel is part of a larger parcel such that it can be said that a partial taking has occurred. *Accord, State v. Silver,* 92 N.J. 507, 520, 457 A.2d 463 (1983); *cf. Uniform Eminent Domain Code* § 1007, 13 U.L.A. 93–94 (1986) (for *purposes of determining just compensation,* parcels that are reasonably suitable and available for use in the reasonably foreseeable future for their highest and best use as an integrated unit shall be treated as one tract).

In *Barnes v. State Hwy. Comm'n,* 250 N.C. 378, 109 S.E.2d 219 (1959), also involving eminent domain, the court stated that the factor most often applied by courts in determining whether land is a single tract is unity of use, and emphasized that

> [t]he unifying use must be a *present* use. A mere intended use cannot be given effect. If the uses of two or more sections of land are different and inconsistent, no claim of unity can be maintained.

*Barnes,* at 385.

■ As these eminent domain cases demonstrate, contrary to the City's position, many courts refuse to consider possible future integrated use in deciding the initial question whether separate parcels constitute a single tract. We agree with this position, and note with approval that the Court of Appeals has looked to the *present use* of land in deciding whether the larger parcel test is satisfied. In *State v. Lacey,* 8 Wn. App. 542, 543, 507 P.2d 1206 (1973), *aff'd,* 84 Wn.2d 33, 524 P.2d 1351 (1974), the court observed that its review of the undisputed evidence in that case of the use of the property in question would answer the question of

whether there was unity of use. *Lacey,* at 544–45. The court examined the evidence as to the present use of the five parcels at issue, and said: "In determining unity of use, it must be kept in mind that the parcels must be used in connection with *each other . . .".* *Lacey,* at 545. The court concluded that not one of the tracts in question was used in connection with any other tract, and the unity of use requirement of the larger parcel test was not satisfied.

In addition to *Lacey,* other Washington cases lend support to our conclusion that the present use to which the property is put is determinative on the unity of use question. *In re Queen Anne Blvd.,* 77 Wash. 91, 137 P. 435 (1913) involved the question whether benefits to one parcel could offset damages resulting from condemnation of another parcel. Resolution of the question depended upon whether the two parcels could be considered one tract. The court found persuasive the view in *Wilcox v. St. Paul & N.P. Ry.,* 35 Minn. 439, 29 N.W. 148 (1886), that regularly platted, unoccupied lots are presumed to be separate tracts. In *Seattle v. Dexter Horton Trust & Sav. Bank,* 90 Wash. 661, 662, 156 P. 844 (1916), *overruled on other grounds in In re Seattle,* 115 Wash. 535, 197 P. 784 (1921), the court did not discuss *In re Queen Anne Blvd., supra* in terms of a presumption, but said that in that case it had held that it is error to treat two platted lots as one tract of land where they were unoccupied and not used in common and each was sufficient in size to be put to a separate use. The court in *Dexter Horton* held that the mere fact tideland was platted was sufficient to require the City there to treat it as a separate parcel from contiguous unplatted land in awarding damages in eminent domain proceedings.

Thus, this court has been of the view that platted lots not put to unified use do not constitute a single tract. At the least, under the Minnesota view noted in *In re Queen Anne Blvd., supra,* there must be some evidence overcoming the strong presumption that platted lots are separate tracts.

■ Here we are concerned, not with mere platted lots, unimproved, but rather with platted lots, improved with separate commercial buildings housing separate businesses. In this circumstance we are not disposed to speak even in terms of a presumption, but instead conclude that the actual, present, independent use of the parcels establishes that the parcels are not one tract as a matter of law. There is no *unity* of use; there is *disunity* of use.

This conclusion is solidly supported by another early Washington case involving eminent domain. There, where the lots were distinct units actually put to different uses, this court held that a property owner could not claim damages to a lot contiguous to the lot taken in eminent domain proceedings. *Seattle v. Atwood*, 59 Wash. 112, 109 P. 326 (1910). In *Atwood*, appellant owned two adjoining lots each improved with a house. Part of one lot was taken. The City was allowed to submit evidence that the building on this lot could be readjusted by using part of the other lot. The court instructed the jury that the appellant was entitled to have the building readjusted so as to make it "practically" as good as it was, and that if the readjustment could not be done, the appellant was entitled to compensation for the entire value of the building. The court did not limit this instruction to the lot on which the building originally stood, however. The jury allowed damages for the building's readjustment.

On appeal, this court noted that it was exceedingly doubtful that the building could be readjusted on its own lot. In any case, the court held that the testimony and the instructions should have been limited to that lot, reasoning: "'Contiguous lots improved for separate use are not one tract.' 2 Lewis, Eminent Domain (3d ed.) 699." *Atwood*, at 114.

In *Atwood*, thus, this court held that contiguous lots under single ownership were not one tract where improved and put to separate use.

Similar to the conclusion in *Atwood* is the statement in Annot., *Eminent Domain: Unity or Contiguity of Separate*

*Properties Sufficient To Allow Damages for Diminished Value of Parcel Remaining After Taking of Other Parcel,* 59 A.L.R.4th 308 § 2, at 320–21 (1988):

[W]here lands, regardless of the nature or extent of the division between various parts, were utilized for separate business, commercial, or industrial purposes, most courts have held that the lands occupied by one business, commercial, or industrial enterprise could not be considered as a unit with the lands occupied by a different business, commercial, or industrial enterprise . . ..

In addition, although in eminent domain proceedings offsetting of benefits against compensation or damages is subject to various treatment in the jurisdictions, one leading commentator has nevertheless stated as a general principle that where separate parcels are not actually used as a unit, but instead "simply have such future possibilities," they may not be regarded as one parcel for the purpose of determining benefits. 3 J. Sackman, *Nichols on Eminent Domain* § 8.6210[1] (3d ed. 1989).

Further, given the particular context here—special assessments—we find the City's position incompatible with the correct measure of special benefits. To illustrate this point, we consider the two situations present in this case. First, lots 10, 11, and 12 are improved with a single commercial building, and the lots have been used together. The Owner properly concedes that these three lots should be combined for purposes of determining special benefits. The measure of special benefits, of course, is the increase in fair market value attributable to the local improvements: the three lots used together before the improvements compared to the three lots used together after the improvements.

In contrast, if, as part of the procedure used in determining special benefits, lot 14 is combined with lots 10, 11, and 12, the increase in fair market value will not be attributable solely to the local improvements. Instead, the increase in value will be derived from the local improvements and the combination of the lots, with the owner's actual use disregarded. This has not been the measure of

special benefits approved by this court, and it is inconsistent with the principle that the assessment be based on the special benefits resulting from the local improvements.

■ The City's principal appraiser never considered the property other than as a single unit. He said he was not familiar with the legal principle of the larger parcel doctrine. Obviously, he never considered existing use in determining the appropriate parcel to be assessed. He considered the four lots only as a single parcel, with all existing improvements removed. An expert's opinion on the market value of real estate must be based upon those legal principles which define the factors which the expert can or cannot consider in reaching his expert opinion.

Finally, the City's reliance on *In re Appeal of Elgart,* 395 Pa. 343, 149 A.2d 641 (1959) is misplaced. There the court concluded that contiguous lots in common ownership have a greater value when aggregated than when separate, and that the jury should consider this as an element of damages in eminent domain proceedings. However, the court also held that the unity of use doctrine should be limited to noncontiguous land, and therefore the court did not consider the use to which the land was put. We do not agree that unity of use is relevant only where noncontiguous lots are involved.

■ Having concluded that actual, present, independent use of lot 14 from the other three lots precludes consideration of the four lots as a single tract, we address several concerns which may arise as a result. First, as we have noted, future use to which property is reasonably adaptable within a reasonably foreseeable time is considered in determining the amount of special assessments. *In re Jones,* 52 Wn.2d 143, 146, 324 P.2d 259 (1958); *In re West Marginal Way,* 112 Wash. 418, 422, 192 P. 961 (1920); *Newell v. Loeb,* 77 Wash. 182, 137 P. 811 (1913). Our holding here does not erode this long–standing, accurate rule. However, possible future use to which the property is reasonably adapted within a reasonably foreseeable time is to be considered here with respect to each of the assessable parcels—

lot 14 as one unit, and the other three lots as the second unit. The four lots may not be lumped together and the special benefits then determined with respect to possible future use of the whole.

Further, we express a note of caution to experts who apply the concept of future highest and best use in establishing special benefits in an assessment proceeding. Potential highest and best use in an assessment proceeding is premised upon a different foundation than in a condemnation proceeding. In a condemnation the government is taking or damaging property regardless of the consent or wishes of the owner. Usually the taking or damaging is permanent. The owner is deprived of or damaged in not only present use, but every future use, including future adaptation to highest and best use as dictated by the market. Therefore, the law permits compensation for the loss of that future opportunity.

Conversely, an owner who is assessed for LID improvements based upon potential highest and best use is forced to pay an assessment on a valuation which may or may not become a reality. Many factors, other than the market, influence the actual and potential use of any parcel of real estate. Not the least of those nonmarket factors are personal considerations and familial relationships, plus the ever–present tax consequences. When the governmental unit assesses its LID charges on a theoretical, compared to existing use, it is forcing the owner to pay on the basis of what an expert says the owner *should* do with his property. These facts must be considered in an assessment proceeding in application of the principle that future use to which property is reasonably adapted within a reasonably foreseeable time may be considered.

This case illustrates the hazard of full application of the highest and best use principle. The City's principal appraiser proceeded on the basis that all improvements would be removed, the parcels combined, access changed and existing rental incomes destroyed.

The owner's present use cannot dictate entirely the calculation of special benefits. However, potential highest and best use considerations must take into account the limitations expressed.

Second, we also do not in any way erode the principle that as an appellate court we do not second-guess the factual determinations of the Council. Valuation testimony was presented to the Council by the City and by the Owner. As an appellate court, it is not our function to reexamine such evidence and independently decide which evidence is most convincing to us. However, all of the testimony of the City's experts on appraisal of the lots was based on use of the lots as an integrated whole. This court has previously held that where expert testimony regarding valuation of the special benefits to property was grounded on a fundamentally wrong basis, that testimony should be disregarded. *In re Local Imp. 6097,* 52 Wn.2d 330, 324 P.2d 1078 (1958). This holding is simply a specific example of the basic rule stated above that "[a] final assessment roll will be upheld unless it stands on a fundamentally wrong basis or the assessing body acts arbitrarily or capriciously. *See Abbenhaus,* at 858; Trautman, at 128–30." *Bellevue Assocs. v. Bellevue,* 108 Wn.2d 671, 675, 741 P.2d 993 (1987); *see* RCW 35.44.260.

The City's expert testimony here was clearly grounded upon a fundamentally wrong basis. The testimony was entirely premised on an incorrect legal principle—that lots improved to separate uses could be assessed as a single unit. The City's expert testimony must be disregarded. There is no special deference to be accorded the Council's decision based on that unacceptable testimony.

In fact, all of the evidence established that the lots are actually used separately; indeed, there is no dispute on this point, and reasonable minds could not differ on the issue. Thus, we agree with the Owner that as a matter of law the present use of the lots establishes no unity of use. Therefore, while satisfaction of the larger parcel test is usually a question of fact for the trier of fact, it is not in this case.

The City is not foreclosed by its error from reassessing the property. *See generally* RCW 35.44.280; RCW 35.44-.310; *Eggerth v. Spokane,* 91 Wash. 221, 157 P. 859 (1916); *In re West Wheeler St.,* 97 Wash. 669, 167 P. 41 (1917). In this regard, two further matters are relevant. The first is that because the City may reassess upon a proper legal basis, the Owner's original expert testimony as to increased valuation to lot 14 resulting from the local improvement carries no weight in new proceedings. Second, that testimony would not be admissible to establish the amount of special benefits in any event. As noted, the Owner's expert testified that the increase in value of lot 14 was only in the amount of the cost of the improvements abutting the lot. However, the benefit to a piece of property is measured by the increase in fair market value resulting from the local improvement, and is not measured by the physical character or cost of the portion of the improvement abutting the property. *La Franchi v. Seattle,* 78 Wash. 158, 165–66, 138 P. 659 (1914); *New Whatcom v. Bellingham Bay Imp. Co.,* 9 Wash. 639, 38 P. 163 (1894); Trautman, *Assessments in Washington,* 40 Wash. L. Rev. 100, 120 (1965). Of course, the Owner may present proper expert testimony as to valuation in new proceedings if she challenges the reassessment.

Affirmed. We remand to the trial court with directions to remand to the Everett City Council in conformance with the requirements of RCW 35.44.270.

CALLOW, C.J., UTTER, DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., and PEARSON, J. Pro Tem., concur.

[The appendix to this case immediately follows.]