[No. 20573–1–I.   Division One.   May 30, 1989.]

Ross Hansen, *Appellant,* v. Local Improvement District No. 335, *Respondent.*

*William R. Levinson, Douglass A. North,* and *Hennings, Maltman, Weber & Reed,* for appellant.

*Marguerite Schellentrager, City Attorney,* for respondent.

PEKELIS, J.—Ross Hansen, d/b/a Auburn Precious Metals, appeals the Superior Court's dismissal of his appeal from an assessment levied against his property under the provisions of the City of Auburn's Local Improvement District (LID) 335. Hansen contends that the City of Auburn (City) violated RCW 35.44 by failing to demonstrate on the record its consideration of which method to employ in assessing the properties within the LID. Hansen also contends that the City's assessment is improper because his property is not "specially benefited" by the local improvement. We affirm.

I

On May 6, 1985, the Auburn City Council (Council) adopted resolution 1591 declaring the City's intention to purchase property for a downtown parking lot and to create an LID to assess the costs of the lot against the properties that would be "specially benefited" by the improvement. The resolution directed the city clerk to notify all property owners within the LID about the nature of the proposed improvement, the estimated cost, the preliminary assessment roll, and the date, time and place of a public hearing at which property owners could present their objections to the LID.

In accordance with RCW 35.43.130, Marv Seabrands, acting director of public works, drafted an engineer certificate and certified it to the Council. The certificate included an estimate of the cost of the proposed parking lot, a description of the boundaries of the LID, a diagram of the proposed improvement showing the surrounding properties that would be "specially benefited" by it, and the portion of the total cost that would be borne by each property. The certificate also recited that the value of the properties within the LID would be increased by 25 percent as a result of the proposed improvement.

Hansen received proper notice of the public hearing and appeared with his attorney to object to the assessment

against his property. At the hearing, Hansen and his attorney argued that Hansen's property would receive no special benefit from the proposed public parking lot because: (1) the property already provided ample parking for Hansen's customers; and (2) if Hansen ever developed his property, an Auburn ordinance would require him to provide additional parking to accommodate any new development. Hansen presented no other evidence to support his objections.

After the hearing, the Council passed ordinance 4064, creating LID 335 and confirming the boundaries and assessments as described in the certificate prepared by Seabrands. The Council then notified all affected property owners of another hearing to consider the final assessment roll of the LID at which all parties could present any further objections to the assessments. After the final hearing, the City passed city ordinance 4088 in which the Council confirmed the LID and the assessments and declared that all the property "shown upon the assessment roll is determined and declared to be specially benefited by this improvement in at least the amount charged against the same".

Hansen appealed to the Superior Court which confirmed the assessment imposed against Hansen's property and awarded the City its statutory attorneys' fees and taxable costs. Hansen appeals the Superior Court's order.

## II

Hansen first contends that the City violated RCW 35.44. Hansen admits that RCW 35.44.047 authorizes the City to use "any other method or combination of methods to compute assessments which may be deemed to more fairly reflect the special benefits to the properties being assessed". He nevertheless contends that the City violated the statute by not establishing *on the record* the basis for its decision to choose the flat rate method, rather than the standard "zone and termini" method, as the "fairer" method of assessment.

■ Our review of whether the City properly assessed Hansen's property is confined to the record of proceedings before the Auburn City Council. *See Bellevue Assocs. v. Bellevue*, 108 Wn.2d 671, 674, 741 P.2d 993 (1987); *accord, Abbenhaus v. Yakima*, 89 Wn.2d 855, 859, 576 P.2d 888 (1978). Moreover, appellate review is limited to assessing the propriety of the process and does not permit an independent evaluation of the merits. *Bellevue*, 108 Wn.2d at 674; *Abbenhaus*, 89 Wn.2d at 859. This court presumes the City acted legally and properly, that "an improvement is a benefit; that an assessment is no greater than the benefit; that an assessment is equal or ratable to an assessment upon other property similarly situated; and that the assessment is fair.'" *Abbenhaus*, 89 Wn.2d at 860–61 (quoting Trautman, *Assessments in Washington*, 40 Wash. L. Rev. 100, 118 (1965)). We will uphold a final assessment roll "unless it stands on a fundamentally wrong basis[1] or the assessing body acts arbitrarily or capriciously."[2] *Bellevue*, 108 Wn.2d at 675; *accord, Abbenhaus*, 89 Wn.2d at 858.

Notwithstanding this strong presumption in favor of the City's action, Hansen argues that RCW 35.44.047 requires the City to show affirmatively on the record how the Council determined that the flat rate method was the fairer method. He cites *Time Oil Co. v. Port Angeles*, 42 Wn. App. 473, 712 P.2d 311 (1985) to support his argument. There, the court held that while RCW 35.44 does not require the City to make a formal determination that one particular method of assessment is more fair than another, "some evidence must appear in the record from which a

---

[1]A "fundamentally wrong basis" is an error in the method of assessment that is "so fundamental as to necessitate a nullification of the entire LID, as opposed to a modification of the assessment as to particular property.'" *Abbenhaus*, 89 Wn.2d at 859 (quoting *Cammack v. Port Angeles*, 15 Wn. App. 188, 196, 548 P.2d 571 (1976)).

[2]"Arbitrary and capricious" refers to "willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action." *Abbenhaus*, 89 Wn.2d at 858.

reviewing court can conclude that this determination has been made." *Time Oil,* 42 Wn. App. at 478.

We question *Time Oil's* inexplicable expansion of the plain terms of the statute. RCW 35.44.047 provides in pertinent part:

> The failure of the council to specifically recite in its ordinance ordering the improvement and creating the local improvement district that it will not use the zone and termini method of assessment shall not invalidate the use of any other method or methods of assessment.

RCW 35.44.047 expressly relieves the City from reciting in its ordinance that it will not follow the standard zone and termini method of assessment. Given this express provision, we fail to see how the same statute could require, as *Time Oil* seems to imply, that the City create a record of its determination to use an alternative method of assessment. It seems unlikely that the Legislature would relieve the City of the obligation to make any recital regarding the assessment method chosen, but then insist that it demonstrate on the record *the basis* for its decision. Had the Legislature so intended, it certainly could have inserted an express *affirmative* recordmaking requirement into RCW 35.44.047. In the context of this section, the absence of an explicit recordmaking requirement is highly significant.

Moreover, the holding in *Time Oil* is inconsistent with *Abbenhaus* which established a strong presumption in favor of the City's action. *Abbenhaus* requires the reviewing court to *presume* that the City acted legally and properly in calculating the assessments and does not permit us to evaluate the merits of the assessment. *Abbenhaus,* 89 Wn.2d at 859–61. Where there is a presumption that the City acted properly, there is logically no need for the City to produce evidence that it considered various methods of assessment before reaching its presumptively correct decision.

For the foregoing reasons, *Time Oil* must be read narrowly, at best. Even if the City is required to make a record demonstrating that it considered the merits of using

a particular method of assessment, slight evidence is all that is necessary to meet this requirement. Only requiring a minimal quantum of proof conforms with the strong presumption in favor of the City's assessment decision.

In this case, the record is sufficient: at the public hearing, one of the downtown property owners who supported the LID stated that the square footage method had been proven over time to be the "most equitable." We hold that this record sufficiently demonstrates that the City determined the square footage method was the "fairer" method.

### III

Hansen next contends that there is insufficient evidence to support the City's finding that Hansen's property was "specially benefited" by the proposed improvement. Hansen argues that because his property was on the periphery of the LID and had adequate on–site parking, the burden shifted to the City to show that the LID specially benefited Hansen's property.

A property is benefited by a local improvement if the fair market value of the property increases after the improvement. *In re Indian Trail Trunk Sewer Sys.,* 35 Wn. App. 840, 842, 670 P.2d 675 (1983), *review denied,* 100 Wn.2d 1037 (1984). Whether property is specially benefited by an improvement is generally a question of fact to be proved by expert testimony. *Indian Trail,* 35 Wn. App. at 842. However, it is presumed that a local improvement benefits all property within an LID unless the challenging property produces competent evidence to the contrary. *Bellevue Assocs.,* 108 Wn.2d at 676–77; *Abbenhaus,* 89 Wn.2d at 860–61. The burden of proof shifts to the City only after the challenging party presents expert appraisal evidence showing that the property would *not* be benefited by the improvement. *Indian Trail,* 35 Wn. App. at 842–43.

Hansen argues that the presumption in favor of the City was overcome "by facts that speak for themselves". In support of his argument, Hansen cites *In re Jones,* 52 Wn.2d 143, 146, 324 P.2d 259 (1958). However, *Jones* supports the

City's position that expert testimony is required to rebut the presumption in its favor. In *Jones,* the parties challenging the City's assessment presented an expert witness "who testified that the improvements did not enhance the market value of [their] properties." *Jones,* 52 Wn.2d at 145.

Here, Hansen failed to present any appraisal or expert evidence at the public hearing to show that his property would not be benefited by the improvement. Instead, Hansen simply asserted that the distance between his property and the parking lot and the presence of adequate parking on his property demonstrated that his property is not "specially benefited" by the improvement. Hansen's bare assertions, without expert testimony, are simply inadequate to overcome the presumption in favor of the City. Accordingly, we uphold the City's finding of special benefit.[3]

## IV

Hansen also contends that the Council usurped the city assessment officer's authority as established in RCW 35.43-.140 by determining the boundaries of the LID in resolution 1591 before receiving the officer's certification fixing those boundaries and thereby violated RCW 35.43.140.

RCW 35.43.140 authorizes the City of Auburn to set forth the "territorial extent", that is, the boundaries of the LID, in the resolution. It also requires the City to notify all persons "who may desire to object" to the proposed improvement. Clearly, all persons who own property within a proposed LID would be interested in being notified. Hansen fails to explain how the City could satisfy its dual obligation to set forth the "territorial extent" of the LID and to notify all interested parties without describing the boundaries of the LID. RCW 35.43.140. Moreover, RCW 35.43.130

---

[3]Hansen argues that the doctrine of res ipsa loquitur should apply in this context, citing *Metropolitan Mortgage & Sec. Co. v. Washington Water Power,* 37 Wn. App. 241, 679 P.2d 943 (1984). However, that case involved a negligence action against a municipal entity and thus does not support Hansen's contention that the doctrine should be applied to actions not based on negligence but involving LID assessments. Absent authority to support this contention, we decline to address it. *State v. Hartley,* 51 Wn. App. 442, 449, 754 P.2d 131 (1988).

does not specifically vest the city assessment officer with the sole responsibility for establishing the boundaries of the LID. Nor does it prohibit the City from setting the LID's boundaries. Thus, the City did not violate RCW 35.43.140.

Hansen also contends that by setting the boundaries of the proposed LID in its resolution, the City violated his due process rights. He argues that the Council "usurped" the city assessment officer's investigatory function thereby impairing the ability of the Council to "deal fairly with the parties before it in adjudicatory proceedings" in violation of the "doctrine of separation of administrative functions."

Where a government body acts in an adjudicatory capacity, the appearance of fairness doctrine requires that the "process by which such decisions are made must not only be fair but must appear to be fair to insure public confidence therein." *Fleming v. Tacoma,* 81 Wn.2d 292, 295, 502 P.2d 327 (1972). However, when a governmental entity makes a legislative decision, the appearance of fairness doctrine does not apply. Rather, this court reviews a legislative action to determine if the governmental body acted arbitrarily or capriciously. *Westside Hilltop Survival Comm. v. King Cy.,* 96 Wn.2d 171, 176, 634 P.2d 862 (1981).

Regardless of whether the City's action is adjudicative or legislative, under either standard of review, Hansen has not made a sufficient case to demonstrate a violation of due process. The Council held a series of public hearings to consider any objections to the proposed LID. Nothing in the record even suggests that the City "prejudged" whether Hansen's property should be included in the LID. Neither is there evidence that the hearing lacked the appearance of fairness in any respect. Compare *Fleming v. Tacoma, supra; Smith v. Skagit Cy.,* 75 Wn.2d 715, 453 P.2d 832 (1969). Rather, the record shows that the Council heard all the objections presented to it before making its final decision to adopt the proposed LID. Thus, Hansen has not established that the City violated his due process rights.

Since Hansen has not prevailed, his request for attorneys' fees and costs is denied. The Superior Court's judgment is affirmed.

COLEMAN, C.J., and FORREST, J., concur.