[No. 14762-2-III.   Division Three.   March 27, 1997.]

JOHN T. KUSKY, ET AL., *Respondents*, v. THE CITY OF GOLDENDALE, *Appellant*.

494

SWEENEY, C.J., dissents by separate opinion.

*Ryan M. Edgley* and *Halverson & Applegate, P.S.*, for appellant.

*Helen M. Kennedy*, for respondents.

SCHULTHEIS, J. — The City of Goldendale widened and paved a block of Brooks Street pursuant to a Local Improvement District (LID) resolution. Afterward, John and Nancy Kusky and other adjacent property owners were assessed their shares of the improvement's costs. During preparation for the street improvements, city workers discovered underground gasoline storage tanks that were probably installed by former owners of the Kusky property. The Department of Ecology directed the Kuskys to remove the tanks from Brooks Street and then put their property on the hazardous waste register for ground and water contamination. As a result, the Kuskys argued the LID actually devalued their property, and objected to paying an assessment for "improvements." The superior court agreed and set aside the assessment. The City appeals, contending (1) the Kuskys failed to rebut the presumption that the LID benefited the Kusky property; and (2) the burden of cleaning up the contamination should not be shifted to the City or the other LID property owners. We affirm.

FACTS

In July 1992, the Kuskys and another property owner filed a petition for an LID to improve the block of Brooks Street adjacent to their properties. At the city council meeting a week later, City Manager Ehman Sheldon told

the council there was a potential "tank problem" in Brooks Street and promised to conduct a "test hole" to find out. Within two days, city employees had inspected Brooks Street, dug holes, drilled into one of two gasoline storage tanks found buried under the street, and brought a Department of Ecology employee to evaluate the area. The City told Ecology the tanks were on property owned by the Kuskys.

Ecology wrote the Kuskys a week later and directed them to permanently close the tanks or to pay $5,000 per day per tank as a penalty. Permanent closure requires either removing the tank or filling it with an inert material. WAC 173-360-385(4). Although the Kuskys had removed other storage tanks on their property (formerly a gas station), the tanks here were buried under Brooks Street, City property. While cleaning their adjacent lot in 1984, the Kuskys had accidentally thrown away the metal lids to the tank "fill ports" visible in the street. At that time, they filled the ports with concrete to close them. Now, fearing Ecology could fine them and concerned that the council would not approve the LID if the situation were not resolved, the Kuskys hired an expert to remove the tanks. After it was assured that the tanks would be removed in time to complete the Brooks Street improvements, the city council passed the ordinance establishing the LID in late July 1992.

The tanks were removed at a cost of $8,800. Although they were discovered to be intact, apparently the fill ports occasionally overflowed. Tests were performed on soil removed from the pits, confirming both soil and groundwater contamination. Washington's underground storage tank regulations require owners and operators of contaminated sites to clean up such areas. WAC 173-360-390(4); 173--360-399. In August 1992, the Kuskys informed the City that they were not owners or operators of the tanks or the property on which they were excavated and denied liability for the costs of cleanup, estimated at $50,000. Nevertheless, the City immediately wrote the Kuskys and

demanded that they "temporarily" refill the excavation so that Brooks Street could be paved and opened for traffic. The Kuskys filled the hole, depositing contaminated soil on their lot. In November 1992, the City informed the Kuskys that the debris on their lot violated municipal codes, ordered it removed, and ordered them to add more fill to the excavation site in Brooks Street, which had settled. Meanwhile, in October 1992 Ecology placed the Kuskys' property on the hazardous waste site register.

In June 1993, the City wrote Ecology and asked for assurances that the Kuskys had completed cleanup of the contaminated area and that if the City paved Brooks Street it would not be in a "libellous position." Ecology never replied. The City proceeded to pave Brooks Street and put in a sidewalk.

The final assessment hearings for the Brooks Street improvements were held in May, June and July 1994. The Kuskys presented evidence that the improvements did not benefit their property. On the contrary, they argued, their removal of the tanks and their cleanup benefited the LID and the City. Certified appraiser Michael Griffin declared that the Kusky property had lost value due to its listing in the hazardous waste register, that the loss exceeded or equaled the value of the cleanup, and that the cleanup costs exceeded the assessment. Additionally, a letter from a local bank president indicated that the bank would not loan against or refinance property listed on the hazardous waste register. After considering this evidence and Mr. Kusky's testimony, the city council assessed the Kuskys $22,500 for their share of the improvements. The assessment reflected the Kuskys' percentage of the total front-footage benefited by the improvements.

The Kuskys appealed to the Klickitat County Superior Court. Finding that the LID assessment was founded on a fundamentally wrong basis and not in accordance with the law, and that the City's decision was arbitrary and

capricious, the superior court annulled the tax assessment on the Kusky property. The City appealed to this court.

## DISCUSSION

The City challenges the trial court's findings that the LID did not benefit the Kuskys. Specifically, it argues that the effect of the discovery of contamination on the property has no relationship to the value of the benefit bestowed by the Brooks Street improvement.

■■■ On appeal, this court limits its review to the record before the council, looks only at the propriety of the assessment process and does not undertake an independent evaluation of the merits. *Doolittle v. City of Everett*, 114 Wn.2d 88, 93, 786 P.2d 253 (1990). An assessment against property located within an LID is presumed proper and will be upheld unless it is founded on a fundamentally wrong basis or the city reached its decision arbitrarily or capriciously. *Abbenhaus v. City of Yakima*, 89 Wn.2d 855, 860-61, 576 P.2d 888 (1978); *In re Indian Trail Trunk Sewer Sys.*, 35 Wn. App. 840, 841, 670 P.2d 675 (1983), *review denied*, 100 Wn.2d 1037 (1984). This presumption is not evidence and may be rebutted. *Indian Trail*, 35 Wn. App. at 843. If the challenging party presents expert appraisal evidence showing that the property is not benefited by the improvement, the burden shifts to the city to prove that the property is benefited. *Bellevue Plaza, Inc. v. City of Bellevue*, 121 Wn.2d 397, 403-04, 851 P.2d 662 (1993).

■■ The degree to which a property specially benefits from an LID is measured by the difference between the fair market value of the property immediately before and immediately after the improvement. *Doolittle*, 114 Wn.2d at 93; *In re Confirmation of Local Improvement No. 6097*, 52 Wn.2d 330, 333, 324 P.2d 1078 (1958). Generally, fair market value means the amount a willing purchaser would pay to a willing owner/seller, taking into consideration all reasonable potential uses of the property. *Local Improvement 6097*, 52 Wn.2d at 333-34. It does not mean the "panic price" and cannot include a speculative value.

*Local Improvement 6097*, 52 Wn.2d at 333; *see also Belle-vue Plaza*, 121 Wn.2d at 411.

■ Whether the fair market value increases due to an LID's improvements is generally a question of fact proved by expert testimony. *Hansen v. Local Improvement Dist. No. 335*, 54 Wn. App. 257, 262, 773 P.2d 436 (1989). The Kuskys' expert, Mr. Griffin, is a real estate appraiser who specializes in the value of property contaminated by hazardous waste. His qualifications are not disputed. He based his evaluation on a 1994 county tax statement, a 1992 site assessment report, the hazardous waste site register, the estimated costs of tank removal and cleanup and his own experience. Mr. Griffin did not provide an appraisal, strictly speaking, but he did provide an expert opinion about "the likely extent of value loss" to the property. Based on his experience, he stated that contaminated properties are "virtually impossible to mortgage or sell," and at best are deeply discounted on the market. In support, he mentioned cases where contaminated property was discounted 53 percent to 75 percent and tax assessments were reduced 10 percent to 80 percent. The Kuskys presented evidence from a local bank president confirming that banks are reluctant to refinance or loan against contaminated property.

In Mr. Griffin's opinion, the LID actually diminished the value of the Kusky property. He explained that a knowledgeable buyer after the LID improvement would factor in the cost of cleanup (estimated at $50,000)—as well as the time, effort and risk involved—to determine the market value. The known costs combined with these variables would result in a "severe discount" that heavily outweighed the City's estimate of the enhancement (assessed at $22,500).

Mr. Griffin's testimony constitutes sufficient evidence that the Kusky property did not benefit from the LID improvements. Accordingly, the burden of proof shifted to the City to prove with competent evidence that the property specially benefited by a specific amount. *Bellevue*

*Plaza*, 121 Wn.2d at 404, 411. This, the City did not do, relying instead on the presumption that the assessment was proper. As rebuttal of the Griffin testimony, the City asserted that the fair market value of the property before the LID should have reflected the fact that it was actually contaminated. This argument was not supported by expert opinion evidence and is merely speculative. *Bellevue Plaza*, 121 Wn.2d at 411; *Local Improvement 6097*, 52 Wn.2d at 335-36 (it is pure speculation to assume a willing buyer would have notice that a future street improvement would have a particular deleterious effect on a property's physical condition).

Even if the presumption of an assessment's validity is successfully rebutted, however, the objector must still show that the assessment was founded on a fundamentally wrong basis or was imposed arbitrarily or capriciously. *Abbenhaus*, 89 Wn.2d at 860-61. A city council proceeds on a fundamentally wrong basis if it uses a method of assessment so flawed that it necessitates a nullification of the entire LID. *Abbenhaus*, 89 Wn.2d at 859. Even if the method of assessment is fundamentally wrong, however, the court is limited to nullification or modification only of the particular property assessment before it. *Id.*; RCW 35.44.250. An arbitrary and capricious action refers to legislative decisions (such as the decision of the council here) made willfully and unreasonably, without regard or consideration of facts or circumstances. *Sparks v. Douglas County*, 127 Wn.2d 901, 908, 904 P.2d 738 (1995); *Abbenhaus*, 89 Wn.2d at 858.

We agree with the trial court that the Brooks Street assessment was founded on a fundamentally wrong basis. Although the City used an accepted formula—the front-foot method—for computing the proportionate shares of the improvement's costs, "[a]ny formula must ultimately relate to benefits, not merely the distribution of costs." *Bellevue Plaza*, 121 Wn.2d at 415. The critical consideration is whether the method of distributing the costs of an improvement fairly represents the benefit to the assessed

property. *Id.* A formula that merely takes into account the extent of the Kusky property that lies adjacent to the Brooks Street improvement, without considering the costs of removing the gasoline tanks that were on City property and the costs of cleanup, does not fairly represent the benefit to *any* of the properties in the LID. This is especially so because the other property owners and the City benefited from the Kuskys' removal of the tanks.

We also find that the council was arbitrary and capricious in approving the assessment without requiring the City to prove the Kusky property was specially benefited. *Indian Trail*, 35 Wn. App. at 843. Additionally, we note that even before the LID improvements were begun, the Kuskys denied liability for the costs of cleanup. As the trial court noted, the City proceeded at its own peril in the face of the inevitable impact of the contamination on the Kuskys' property value.

Affirmed.

BROWN, J., concurs.

SWEENEY, C.J. (dissenting) — The dispositive question here is whether the Brooks Street Local Improvement District No. 1086 (LID) specially benefited John and Nancy Kusky's property. RCW 35.44.010. It did. The expense to remove the underground storage tanks and clean up the soil and groundwater contamination should not be considered in calculating whether the LID specially benefited the Kuskys' property.

RCW 35.44.010 provides that "[a]ll property included within the limits of a local improvement district . . . shall be considered to be *the property specially benefited by the local improvement* and shall be the property to be assessed to pay the cost and expense thereof or such part thereof as may be chargeable . . . ." (Emphasis added.) An assessment is presumed to be proper. And a city is presumed to have acted legally and properly. *Bellevue Plaza, Inc. v. City of Bellevue*, 121 Wn.2d 397, 403, 851 P.2d 662 (1993) ("improvement is presumed to be a benefit"). The party at-

tacking the assessment has the burden of going forward with credible evidence to rebut those presumptions. *In re Indian Trail Trunk Sewer Sys.*, 35 Wn. App. 840, 842-43, 670 P.2d 675 (1983) (efficacy of presumption lost if the party attacking the assessment adduces credible evidence to the contrary), *review denied*, 100 Wn.2d 1037 (1984).

Michael Griffin, the Kuskys' real estate appraiser, stated in his declaration that the LID devalued the property because the Kuskys incurred significant costs to remove the underground storage tanks and to clean up the contaminated soil and groundwater. His opinion was also based on the fact that the Department of Ecology placed the Kuskys' property on the hazardous waste site register. A local bank president stated that his bank's policy is not to refinance or loan money against property listed on the site register as contaminated property.

Clearly, if the storage tanks and petroleum contamination are considered, the Kuskys' property has suffered a diminution in value. But the inquiry is whether the LID—the *improvement of the road* by the City—resulted in a diminution of the Kuskys' property. RCW 35.44.010. As defined by the City of Goldendale Ordinance No. 1086, the scope of the LID, which the Kuskys and other neighbors petitioned for, was solely intended to widen and resurface Brooks Street, install curbs, overlay and widen existing curbs, and upgrade drainage. The unfortunate discovery and coincidental removal and clean up of the underground storage tanks was not part of the LID. The problem surfaced because of the road improvement, but that does not make it part of the LID.

The Kuskys have not rebutted the presumption that the property was "*specially benefited by the local improvement . . . .*" RCW 35.44.010 (emphasis added). I would reverse the annulment of the assessment.