[No. 21703.  Department Two.  June 6, 1929.]

THE STATE OF WASHINGTON, *on the Relation of the City of Renton, Respondent,* v. COMMERCIAL WATERWAY DISTRICT No. 2 *et al., Appellants.*[1]

[1]Reported in 278 Pac. 423.

*Frank S. Griffith* and *Burkheimer & Burkheimer*, for appellant.

*Agnes N. Richmond* and *Tucker, Hyland & Elvidge*, for respondent.

MILLARD, J.—Renton, a city of the third class, by ordinances of June and November, 1924, organized within its corporate limits two local improvement districts for the purpose of paving streets and constructing sidewalks. The city council duly approved and confirmed by ordinance the assessment rolls, and assessments were levied on the real property within the improvement districts. Commercial Waterway District No. 2, a quasi-municipal corporation, organized under the commercial waterways statute (Rem. Comp. Stat. §§ 9724-9776), refused to pay the special assessments levied against it, and disallowed the claim filed with it for same. The relator instituted proceedings in the superior court for King county for a writ of mandate, requiring the secretary and the board of commissioners of the waterway district to issue to the relator warrants in payment of the special assessments. The demurrer to the complaint was overruled. The affirmative defense in the amended answer, that the city was acting unconstitutionally, was stricken on motion of the relator. The court entered its order decreeing that writ of mandate issue directing the drawing and issuing of warrants upon the funds of the waterway district, payable to relator, in payment of the special assessments. From that decree, the appeal is prosecuted.

May a quasi-municipal corporation, such as Commercial Waterway District No. 2, be required to issue warrants to pay a local improvement assessment

levied by a city of the third class, such as relator? That is the sole question presented for determination.

Counsel for appellants argue that the commercial waterway district statutes do not grant to the commissioners of the district the power to levy and collect taxes for the payment of local improvement assessments against the property of the district, nor may the income from the sale of excavated material be applied to the payment of any expense other than that of construction and maintenance of the waterway. It is further contended that the paving of a street is not a benefit to the waterway.

"Any city or town in this state shall have power to provide for making local improvements and to levy and collect special assessments on property specially benefited thereby, for paying the cost and expense of the same or any portion thereof, as herein provided." Rem. Comp. Stat., § 9352.

"Any city or town shall have power to determine by charter or ordinance what work shall be done or improvements made at the expense, in whole or in part, of the property especially benefited thereby; and to provide the manner of making and collecting assessments therefor in pursuance of this act." Rem. Comp. Stat., § 9353.

The waterway district statute expressly reserved to the city the power to make local improvements if the exercise of the power did not impair the efficiency of the waterway;

"Provided, however, that the construction of such commercial waterway or commercial waterways shall not have the effect of impairing any right, power, or authority now existing on the part of any city or town to construct in, upon, underneath, above or across such commercial waterway or commercial waterways, sewers, water-pipes, mains, the granting of any franchise thereon, or improve by way of planking, replanking, paving or repaving or any other power, right and authority which, but for this act, such city or town

would have in or to such street, avenue, alley or public place, except, however, that such right, power and authority on behalf of such city or town shall not be exercised by such city or town . . . which will materially impair the efficiency of said commercial waterways." Rem. Comp. Stat., § 9731.

Pursuant to authority granted by the local improvement statute (Rem. Comp. Stat., § 9352 *et seq.*), the city created the two local improvement districts, and levied the special assessments. The prescribed procedural steps were taken, and the assessment roll confirmed, without objection on the part of appellants.

Under Rem. Comp. Stat., § 9375:

"Whenever any assessment-roll for local improvements shall have been confirmed by the council or other legislative body of such city or town as herein provided, the regularity, validity and correctness of the proceedings relating to such improvement, and to the assessment therefor, including the action of the council upon such assessment-roll and the confirmation thereof, shall be conclusive in all things upon all parties, and cannot in any manner be contested or questioned in any proceeding whatsoever by any person not filing written objections to such roll in the manner and within the time provided in this act, and not appealing from the action of the council in confirming such assessment roll in the manner and within the time in this act provided. No proceeding of any kind shall be commenced or prosecuted for the purpose of defeating or contesting any such assessment, or the sale of any property to pay such assessment, or any certificate of delinquency issued therefor, or the foreclosure of any lien issued therefor: Provided, that this section shall not be construed as prohibiting the bringing of injunction proceedings to prevent the sale of any real estate upon the grounds (1) that the property about to be sold does not appear upon the assessment-roll, or (2) that said assessment has been paid,"

a conclusive presumption of the waiver of all objections by appellants is created. Not having questioned

in the assessment proceedings, before the assessment was finally confirmed, the validity of the assessment on the ground that its property was not benefited, the determination of the city council is final in the absence of fraud or manifest violation of law.

"Their right to enjoin the collection of the assessment results if at all from a total lack of authority in the council to assess their property for this improvement. . . . the appellants' property would be liable for assessment if specially benefited as stated in the resolution and ordinance. By failing to file written objections before the confirmation of the assessment roll, showing that the improvement was of no benefit to their property, the appellants have brought themselves within the estoppel of § 23 of the act, and this action not being one of the exceptions provided for therein, the court was without jurisdiction of the subject-matter." *Grandin v. Tacoma,* 87 Wash. 98, 151 Pac. 254.

"All informalities as well as all defenses going to the amount of the assessment, are merged in the order of confirmation. The order of confirmation is not subject to collateral attack unless made void by some subsequent proceeding. No general rule in special assessment cases is subject to as few exceptions as this [citing cases] . . . The city had jurisdiction of the subject-matter. To deny it the power to assess, there must be more than a showing of a lack of benefit, or that the assessment is too high, or that proper credits have not been given. Page and Jones Taxation by Local and Special Assessments, § 933. There must be a lack of original jurisdiction to make the improvement. We understand this to be the meaning of Laws of 1911, p. 455, § 23 (Rem. Code, § 7892-23). . . . The city had power to make the assessment. An erroneous exercise of that power, although operating as a denial of a positive right will not void a proceeding so as to make it vulnerable to a collateral attack. This is always so where the thing complained of must be made to appear by resort to facts *dehors* the record of the original proceeding, . . ." *Sanderson v. Seattle,* 95 Wash. 582, 164 Pac. 217.

"We think the remedy available to the appellants was to file objections to the assessment roll, and in the event of an adverse decision of the city council, to follow the procedure provided for in the local improvement code. Not having followed this remedy they cannot now be heard to complain by an independent action in equity." *Shaser v. Olympia,* 92 Wash. 466, 159 Pac. 756.

"It is claimed in behalf of appellants that judgment of foreclosure should not be awarded, because . . . the assessment was not according to the benefits accruing to the several lots. . . . no objection to the roll having been made its confirmation by the council rendered 'the regularity, validity and correctness of the proceedings' conclusive. Section 9375, Rem. Comp. Stat. If objections be made against the assessment, and have been overruled by the council and the assessment confirmed notwithstanding the objections, the objectors might thereupon have appealed to the superior court from the action of the council in that behalf. Section 9375, Rem. Comp. Stat. But this is not an appeal from the council's confirmation of the roll. These provisions of the general local improvement statute of 1911, and similar provisions in prior statutes, have been given full force and effect by repeated decisions of this court. *Rucker Bros. v. Everett,* 66 Wash. 366, 119 Pac. 807 . . . The claimed irregularities were cured by the final hearing and the decision of the council thereon confirming the assessment roll." *Town of Brewster v. Hamilton,* 138 Wash. 652, 244 Pac. 973.

The relator was vested with the power to make the local improvement and acquire jurisdiction by the procedure prescribed by the statute; and all objections are deemed to be waived if not presented at the time and in the manner provided by the statute. The question whether the appellants' property was benefited, not having been raised by proper objections before the city council or on appeal therefrom, can not for the first time be reviewed here.

■ Is the property of appellants exempt from assessment for local improvements? The ordinances and statute authorizing the organization of the local improvement districts and the assessment of the property specially benefited do not expressly direct that the property of the waterway district shall be assessed, neither do the ordinances and the statute expressly exempt the property from assessment.

We are committed to the rule that all property covered by the general terms of the statute and not specifically exempted, is subject to assessment for local improvements.

"In *Edwards & Walsh Const. Co. v. Jasper County,* 117 Iowa 365, the Iowa court, in summing up a discussion of this distinction between taxes and special assessments and in commenting upon the power of a city to levy such special assessments against the property of a county, said:

" 'True, the right to levy these assessments is referable to the power of taxation, but statutes exempting property from general taxation are almost universally held inapplicable to special assessments. See cases heretofore cited. Reduced to its last analysis, the question is one of power in the city to levy the assessment against the county property. The statute giving the power is broad enough to cover lots or lands owned by municipal or *quasi* municipal corporations, and, if there be any exemption, it is to be implied, unless we hold with those courts which say that county or state property is not to be included unless expressly mentioned, or by necessary implication inferred. We are not disposed to apply this last-mentioned rule in construing our statutes. Such property is expressly exempted from general taxation, but no such exemption is made from special assessments. Even without a statute, property devoted to governmental use would not, in the absence of express authority, be taxed, and the fact that it is expressly exempted in one case and not in the other is strong evidence that the legislature did not intend to exempt it from special assessments.' "

*In re Howard Avenue North,* 44 Wash. 62, 86 Pac. 1117.

■ However, contend appellants, the waterway district may not levy and collect taxes except for the construction, maintenance and repair of the waterway system, therefore it cannot be compelled to levy a tax to pay the special assessments. We are not required to decide that question. The power of the city to levy the special assessment upon appellants' property does not depend upon the question whether a valid and enforcible lien can be created against appellants' property. The city had authority to levy a special assessment upon appellants' property.

"It is well settled that property in use for public or governmental purposes can not be sold on execution or other legal process. This rule is generally applied to the sale of public property to pay local assessments for public improvements. The rule has been applied in cases of an assessment against public property belonging to a county, and to public property used for school purposes. In such cases the amount should be paid out of the treasury, and mandamus will lie to compel such payment. And if a county refuses to pay the special assessments or taxes legally levied against its property, as such property, on account of the public uses to which it is applied, cannot be sold at a tax or other forced sale, there is no impropriety, after the claim is disallowed, in permitting an action to recover the same. The judgment can then be paid as other judgments against a county." 25 R. C. L., p. 184, § 97.

■ The mandate requires appellants to issue warrants to be paid in numerical order in due course out of any cash in the fund of the waterway district. Appellants receive, under contract with King county, approximately nine hundred dollars monthly from the sale of sand and gravel.

". . . Provided, that the commissioners of said commercial waterway district may sell or otherwise

dispose of all excavating material of every kind in such manner and upon such terms and conditions as in their discretion they may deem advisable and for the best interests of such commercial waterway district without any notice or other formalities or proceedings whatever. The proceeds of any sale of such excavated material are to be used for the benefit of such commercial waterway district and the payment of any expense connected with the cost of construction or maintenance thereof." Rem. Comp. Stat., § 9756.

Appellants insist that there is no authority, express or implied, to divert such funds to other purposes than for the benefit of the waterway district. A similar situation was presented in *Seattle School District No. 1 v. Seattle,* 44 Wash. 62, 86 Pac. 1117. It was there argued that the funds of a school district raised solely for school purposes could not be diverted to the payment of special assessments for local improvements. We held that the fund, though created for school purposes, could be applied to the payment of such assessments. It may be argued that *Seattle School District No. 1 v. Seattle, supra,* is distinguishable from the present case on the ground that the school property was in fact specially benefited, while in the present case the assessed property is not benefited. They cannot be so distinguished. In the *School District* case, *supra,* it was decided that the school property was in fact specially benefited. The question whether the appellants' property in this case is benefited is not before us. We must assume at this stage that the property was specially benefited, and clearly the funds derived from the sale of sand and gravel may be applied to the payment of the warrants when issued against the fund. Funds are available, and this is an obligation imposed by law. The commissioners of the waterway district have authority to issue warrants in payment of all claims of indebtedness.

"The board of commissioners of such district shall elect one of their number chairman and one secretary, and shall keep minutes of all their proceedings, and may issue warrants of such district in payment of all claims of indebtedness against such district." Rem. Comp. Stat., § 9760.

Affirmed.

MAIN, BEALS, and PARKER, JJ., concur.