[No. 53288–5.  En Banc.  August 20, 1987.]

BELLEVUE ASSOCIATES, *Appellant,* v. THE CITY OF BELLEVUE, *Respondent.*

*Diamond & Sylvester,* by *Paul Sikora,* for appellant.
*Richard L. Andrews, City Attorney,* for respondent.

GOODLOE, J.—We address whether the adoption of a final assessment roll on a local improvement district project was premised on a fundamentally wrong basis. The trial court upheld the final assessment roll. We affirm.

The Bellevue City Council passed ordinance 3112 on June 7, 1983, thereby creating Local Improvement District (LID) 255. The LID's boundaries encompassed properties owned by (a) Bellevue Associates, (b) Bellevue Properties, and (c) Walter and Francis Webster and Robert Kroum (hereinafter Webster and Kroum). All of the property owners supported the formation of LID 255. Appraisal evidence indicates that all properties within the LID received special benefits from the improvements in an amount equal to or exceeding their assessments by the City Council.

The proposed work was divided into four separate improvements: (1) the extension of 110th Avenue Northeast into the block between the parcels owned by Bellevue Associates and those owned by Webster and Kroum and by Bellevue Properties; (2) roadway improvements to Northeast 8th Street which fronts the properties of Bellevue Associates and of Webster and Kroum; (3) water main improvements to 110th Avenue Northeast; and (4) water main improvements to Northeast 8th Street. The cost of the four improvements totaled $1,235,544.778.

Hearings on the final assessment roll were held on February 21, April 16, and May 7, 1984. The City Council based the proposed assessment roll on a before–and–after appraisal conducted by Bruce C. Allen, a real estate appraiser retained by the City of Bellevue. At the April 16 hearing Allen presented a revised before–and–after appraisal. During the hearings, the LID property owners were provided opportunity to present their objections to the proposed assessment roll, including their own appraisal evidence. On May 7, the City Council adopted ordinance 3350 approving the final assessment roll.

The assessments were levied as follows:

|  | Bellevue Associates | Bellevue Properties | Webster and Kroum |
|---|---|---|---|
| (1) Appraised Value Before LID 255 | $4,276,000.00 | $1,290,000.00 | $1,130,000.00 |
| (2) Appraised Value After LID 255 | 5,131,000.00 | 1,567,000.00 | 1,355,000.00 |
| (3) Special Benefits | 855,000.00 | 277,000.00 | 225,000.00 |
| (4) Final Assessment | 810,997.91 | 245,878.81 | 178,668.06 |
| (5) Final Assessment ÷ Special Benefits | 94.85% | 88.76% | 79.41% |

Total Final Assessment ÷ = $1,235,544.78 ÷ = 91.05%
Total Special Benefits $1,357,000.00

The special benefit figures (row 3) reflect the increased value of the LID properties resulting from the LID improvements. The final assessment figures (row 4) are the amounts taxed. The total sum of the final assessments equals the actual cost of all of the LID improvements. Figures in row 5 represent the percentage of special benefits which were actually taxed.

The method by which the City Council derived the assessments was described in oral argument. The City Council first recognized that the 110th Avenue Northeast improvements (improvements 1 and 3) were distinct from the Northeast 8th Street improvements (improvements 2 and 4). Because the City Council determined that improvements 2 and 4 did not specially benefit the properties of Webster and Kroum and Bellevue Properties, these improvements were assessed exclusively against Bellevue Associates. The City Council then derived a formula which spread the assessments associated with improvements 1 and 3 across all properties in the LID based upon property value. The formula took into consideration the square footage of each of the properties. The formula also recognized that improvements 1 and 3 provided a lesser benefit to the residentially zoned properties of Webster and Kroum and Bellevue Properties than the commercially zoned property of Bellevue Associates.

Bellevue Associates appealed to the King County Superior Court. In its memorandum opinion the trial court held

that Allen's appraisal was not founded on a fundamentally wrong basis and the City Council action based on Allen's appraisal was not arbitrary or capricious. The trial court affirmed the final assessment roll. Thereafter, Bellevue Associates appealed to the Court of Appeals. The matter was certified to this court.

The issue we address is whether the Bellevue City Council adopted the final assessment roll on a fundamentally wrong basis. Specifically, we address: (1) May a city assess two of four improvements in an LID project exclusively against one of the several properties within the LID, when all properties within the LID receive special benefits from the project? and (2) Must the percentage of special benefits assessed an LID property be the same as the percentage assessed the other LID properties?

■ Before addressing these issues we note that certain principles of judicial review apply. Review is limited to the record of proceedings before the City Council. *Abbenhaus v. Yakima,* 89 Wn.2d 855, 859, 576 P.2d 888 (1978); *Smith v. Skagit Cy.,* 75 Wn.2d 715, 718–19, 453 P.2d 832 (1969). The reviewing court looks at the propriety of the process and does not undertake an independent evaluation of the merits. *Time Oil Co. v. Port Angeles,* 42 Wn. App. 473, 479, 712 P.2d 311 (1985); *Abbenhaus,* at 859. The action of the City Council is presumed legal and proper; the party challenging the assessment has the burden of proving its incorrectness. *Abbenhaus,* at 860–61. Further, an appellate court "presume[s] that an improvement is a benefit; that an assessment is no greater than the benefit; that an assessment is equal or ratable to an assessment upon other property similarly situated; and that the assessment is fair.'" *Abbenhaus,* at 861, quoting Trautman, *Assessments in Washington,* 40 Wash. L. Rev. 100, 118 (1965).

Special assessments to pay for local public improvements benefiting specific lands are of ancient lineage. *See Heavens v. King Cy. Rural Library Dist.,* 66 Wn.2d 558, 563, 404 P.2d 453 (1965); *Austin v. Seattle,* 2 Wash. 667, 27 P. 557 (1891). Special assessments have a common element: they

support the construction of local improvements that are appurtenant to specific property and bring a benefit to that property substantially more intense than is conferred on other property. *Heavens,* at 563. There must be an actual, physical and material benefit to the land. *Heavens,* at 563. The measure of special benefits is "the difference between the fair market value of the property immediately after the special benefits have attached and its fair market value before they have attached." *Heavens,* at 564; *In re Schmitz,* 44 Wn.2d 429, 434, 268 P.2d 436 (1954). "[A] valid special assessment for a local improvement is merely compensation paid by the property owner for the improved value of his land." *Heavens,* at 564.

A final assessment roll will be upheld unless it stands on a fundamentally wrong basis or the assessing body acts arbitrarily or capriciously. *See Abbenhaus,* at 858; Trautman, at 128–30. "Fundamentally wrong basis" has been defined as follows:

> [I]t "refers to some error in the method of assessment or in the procedures used by the municipality, *the nature of which is so fundamental as to necessitate a nullification of the entire LID,* as opposed to a modification of the assessment as to particular property." We agree with this definition and adopt it. Before a superior court alters or nullifies any portion of an assessment under the "fundamentally wrong basis" standard, the assessment must meet this definition, although we emphasize that the statute provides that where such fundamental error exists *the court is limited to nullification or modification only of those parcel assessments before it.*

(Italics ours.) *Abbenhaus,* at 859, quoting in part *Cammack v. Port Angeles,* 15 Wn. App. 188, 548 P.2d 571 (1976). Bellevue Associates does not allege that the City Council acted arbitrarily or capriciously.

## I

First, Bellevue Associates argues improvements 2 and 4 were assessed improperly because they were only assessed against its property. Bellevue Associates posits that within the boundaries of the LID a city council may not segregate

a single cost item and assess it against only one property, relying on *Sterling Realty Co. v. Bellevue,* 68 Wn.2d 760, 766–69, 415 P.2d 627 (1966) and *In re California Ave.,* 30 Wn.2d 144, 147–48, 190 P.2d 738 (1948). In *Sterling* the court concluded that a city may not "divide a continuous local improvement project into units in order to assess the cost of acquisition of rights–of–way against the units from which the rights–of–way were acquired." *Sterling,* at 769. In *California* the court concluded that no authority supported segregating a portion of the work and making a special assessment for the segregated portion. *California,* at 147.

*Sterling* and *California* are distinguishable. Unlike the LIDs in *Sterling* and *California,* the present case involves separate and distinct improvements. With separate improvements each must specially benefit the property owner before he or she may be assessed for that improvement. As case law makes clear: "[O]nly that portion of the costs of the local improvement which is of special benefit to the property can be levied against the property." *Schmitz,* at 433. If improvements 2 and 4 only specially benefited Bellevue Associates' property, then it is solely responsible for the assessments associated therewith.

The City Council relied on Allen's expert appraisal testimony in making its assessments. We note that Bellevue Associates does not challenge the validity of Allen's appraisal, but rather the manner in which the City Council used it. Allen found some special benefits from the LID to the properties of Webster and Kroum and Bellevue Properties; nevertheless, he allocated the costs of improvements 2 and 4 exclusively to Bellevue Associates. The logical and readily apparent implication is that Allen determined improvements 2 and 4 did not confer special benefits on the properties of Webster and Kroum and Bellevue Properties. Indeed, the City Council had before it appraisal testimony presented by Webster and Kroum to the effect that the Webster and Kroum property received no special benefits from any of the improvements. The question of whether a

property has been specially benefited by an improvement is ordinarily a question of fact. *In re Jones,* 52 Wn.2d 143, 146, 324 P.2d 259 (1958). Therefore, reliance on expert testimony was crucial. Necessarily then, it is of importance that the validity of Allen's assumptions and appraisal are not an issue before us.

No evidence in the record indicates that the properties of Webster and Kroum and Bellevue Properties were specially benefited by improvements 2 and 4. Bellevue Associates claims otherwise. However, this contention lacks sufficient supporting evidence in the record, and therefore, it is inadequate to overcome the presumption that the assessment was fair. *See Abbenhaus,* at 861. Our review of the record further indicates all of the parties intended that Bellevue Associates be responsible for the costs of improvements 2 and 4. The City Council only included improvements 2 and 4 in the LID because it was logical and cost efficient that these improvements be made at the same time as the other improvements. We conclude that the segregation of improvements 2 and 4 and assessment of those improvements solely against Bellevue Associates were proper.

## II

Second, Bellevue Associates argues that its assessment was in error because all properties within an LID must be assessed the same percentage of the special benefits they receive. Bellevue Associates cites to *Sterling,* at page 765, which provides:

A review of these settled propositions and of the statutes which govern the assessment procedure in local improvement districts, convinces us that two concepts are basic to the assessment procedure. The method utilized is to assess each parcel of land within the district as nearly as reasonably practicable in accordance with the special benefits gained by that parcel from the entire improvement, and to assess each parcel its *proportionate share* in relation to other parcels throughout the improvement district. As phrased by Professor Trautman in his article "Assessments in Washington," 40 Wash. L. Rev. 100, 120, "The questions are: to what extent is the

particular tract benefited by the entire improvement, and is the particular tract assessed proportionally with the other property included within the improvement district.

Bellevue Associates contends that the City Council clearly did not comply with the proportionality requirement. It argues that because the total cost of the LID 255 improvements was 91.05 percent of the total special benefits appraised by Allen, the City Council should have assessed each property owner 91.05 percent of his or her special benefits. *See Sterling,* at 765–66. Thus, Bellevue Associates argues that the City Council erred when it assessed Bellevue Associates 94.85 percent of its special benefits.

The City of Bellevue argues that the assessment does meet the requirements of *Sterling.* It argues that the City Council's formula allocated the costs incurred and benefits received equally and equitably to each property throughout the LID. This is because the formula took into consideration that the Webster and Kroum property and Bellevue Properties property are zoned residential, unlike the Bellevue Associates property which is zoned commercial, and thus the former properties are of lower value and were less benefited by the improvements.

The method of assessment is not fixed in stone. RCW 35.44.047 provides:

> Notwithstanding the methods of assessment provided in RCW 35.44.030, 35.44.040 and 35.44.045, the city or town may use any other method or combination of methods to compute assessments which may be deemed to more fairly reflect the special benefits to the properties being assessed.

Our review of the record indicates no evidence to indicate that the assessments imposed were not equal or ratable and fair. *See Abbenhaus v. Yakima,* 89 Wn.2d 855, 861, 576 P.2d 888 (1978). Each property was assessed in accordance with the special benefits received. Furthermore, we conclude the proportionality requirement does not mandate that all properties within an LID be assessed the same percentage of the special benefits received. Indeed, Bellevue

Associates' percentage is necessarily higher as it reflects that improvements 2 and 4 were solely assessed against its property. We find no reason to presume that the City Council did not assess the properties within the LID the same proportion of the special benefits they received. Therefore, we conclude that the assessments complied with proportionality requirements.

In sum, Bellevue Associates has not proven error "which is so fundamental as to necessitate a nullification of the entire LID". *Abbenhaus,* at 859. The assessments were not shown to be premised on a fundamentally wrong basis. Given the strong presumptions in favor of the propriety of the assessments and Bellevue Associates' failure to prove otherwise, the assessments against the property of Bellevue Associates are affirmed.

PEARSON, C.J., UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, CALLOW, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.