[No. 21002-2-III. Division Three. February 27, 2003.]

*In the Matter of the Hearing Examiner's Decision Regarding the Towner Utility Local Improvement District No. U966, Final Assessment for Parcel Nos. 45242.9122, 45242.9123, 45242.9124, and 45231.1208.*

HARLAN DOUGLASS, ET AL., *Respondents*, v. SPOKANE COUNTY, *Appellant*.

Steven J. Tucker, Prosecuting Attorney, and Ronald P. Arkills, Deputy, for appellant.

Michael J. Murphy and Nancy A. Robertson (of Groff & Murphy, P.L.L.C.), for respondents.

BROWN, C.J. — The superior court annulled certain Utility Local Improvement District (ULID) assessments imposed by Spokane County (County) against parcels held by Harlan and Maxine Douglass and their son, Lanzce. About 10 years earlier, the parcels were connected to the Spokane sewerage system in connection with a county road project after payment of facility charges to the County. The County appealed. We decide whether the trial court erred in deciding (1) the Douglasses' properties were not specially benefited, (2) the ULID improvements and prior improvements did not form a single, integrated sewerage system, and (3) notice was inadequate. We affirm.

## FACTS

Like the superior court, we review stipulated facts. In 1984, as part of Country Road Project (CRP) No. 2125, a sanitary sewer line was installed, providing sewer lines to property owned by Harlan and Maxine Douglass on the southeast corner of Sullivan Road and Fourth Avenue. The cost of the sewer construction was $257,237.72 and paid by the County Engineer's Office at the time of construction in 1985 and 1986.

In 1987, Harlan and Maxine Douglass developed three separate properties that connected to the CRP 2125 sewer

line. The properties consisted of the Sullivan Road Apartments, a 128-unit complex; a Circle K convenience store; and the Sullivan Road house, residence of the apartment manager. The Douglasses do not dispute that their properties were benefited by CRP 2125 improvements. In March 1987, Harlan Douglass signed a sewerage developer connection agreement. The agreement includes the following clause:

> WHEREAS, the County is agreeable to allowing the Developer to connect the use(s) on that parcel of property described in Attachment "A", to the County's sewerage system subject to certain conditions, including in part the Developer paying all costs associated with such connection, as well as the Developer agreeing that the "special benefits" accruing to the properties as a result of the connection to the County's sewerage system at the present time, will establish the "special benefits" accruing to the properties if a Utility Local Improvement District, pursuant to Chapter 36.94 RCW, is established and includes such properties.

Board R. (BR) at 487-88. Further, section five of the agreement provides:

> [I]n determining the "special benefits," accruing to those properties described in Attachment "A", when and if a Utility Local Improvement District is formed . . . which ULID includes all or a portion of said properties, that the "special benefits", accruing to such properties at the time of the formation of the ULID will be based upon the benefits accruing to such property, at the time the County allows the Developer to use the County's sewerage facilities as provided for in Section 3 herein, as a result of allowing the properties to connect to the County's sewerage system.

BR at 493.

Lanzce Douglass owns property across from Harlan and Maxine Douglasses' property. In 1997, he constructed the Granite Park Apartments, a 40-unit complex. It connected into the existing sewer line installed pursuant to CRP 2125. Lanzce Douglass did not sign a sewerage developer connection agreement.

As a condition of connecting to the existing sewer lines, the County assessed a general facility charge (GFC) under chapter 8.52 Spokane County Code (SCC) on the Douglasses' properties, payable over two years. Harlan and Maxine Douglass have paid $46,080 in GFC charges for the Sullivan Road Apartments and $435 for the Sullivan Road house. As part of its lease terms, the lessor of the Circle K property has paid all GFCs assessed on the Circle K property. Lanzce Douglass has paid $17,760.

In January 1996, the Board of County Commissioners approved a resolution, creating ULID No. U966, thereby providing the County authority to assess specially benefited properties. ULID No. U966 entailed expanding sewer service to the west of the Douglasses' properties and did not directly affect their properties. Further, none of the flow from the Douglasses' properties enters into any portion of the improvements constructed after ULID No. U966 was adopted. In preparing the estimated project cost, the County included the entire $257,237.72 previously spent under CRP 2125.

After deducting for the GFCs paid, the parcels were assessed under ULID No. U966: Sullivan Road Apartments—$35,011.08, Sullivan Road house—$5,145.54, Circle K property—$7,322.21, and Granite Park Apartments—$12,000.00. The Douglasses filed a protest of the ULID assessments with the Board of County Commissioners, which included a letter from a real estate broker, Joseph G. Ward. Mr. Ward stated, "special benefit" is the difference between the fair market value of the property immediately after the special benefit has attached and the value before it attached; ULID No. U966 "adds absolutely no special benefit to the four Douglass Properties." BR at 791.

The County's appraiser, Stephen L. Barrett, stated "special benefit" was the difference between the value of the property with sewer and the value of the property without sewer. Clerk's Papers (CP) at 65. He stated the "special benefit" was for Sullivan Road Apartments and Sullivan

Road house, combined under the larger parcel rule,[1] $270,000; Circle K property, $20,000; and Granite Park Apartments, $140,000. CP at 65-66.

The County's hearing officer concluded that while inclusion of CRP 2125 costs in ULID No. U966 was reasonable and permissible under the law, the Douglasses were responsible only for the CRP costs. Thus, the hearing officer recommended "the assessment should be recalculated, using CRP 2125 sewer line improvement costs rather than the full cost of the ULID No. U966 improvements." BR at 246. The County then revised the assessments as follows: Sullivan Road Apartments—$21,602.69, Sullivan Road house—$586.40, Circle K property—$1,522.94, and Granite Park Apartments—$3,375.94. The hearing officer approved the recalculations.

The Douglasses appealed to the Board of County Commissioners. It rejected the hearing officer's recommendation to reduce the assessments and reinstated the original amounts, concluding CRP 2125 and ULID No. U966 were a single, integrated improvement. Further, the Board of County Commissioners concluded compliance with Treasury Regulation No. 1.150-2, concerning tax exempt requirements for local bonds, had no bearing on the special benefits issue.

The Douglasses then appealed to the Spokane County Superior Court. The superior court annulled the assessments, concluding ULID No. U966 was unlawfully retrospective in nature; thus, the CRP 2125 improvements could not be tied into the new ULID project. Further, the Douglass properties were not specially benefited by the ULID No. U966 improvements. The court mentioned the lack of notice given to the Douglasses regarding additional assessments for CRP 2125 improvements. Treasury Bill Regulation No. 1.150-2 was deemed outside the realm of the current issues.

The County appealed.

---

[1] *See Doolittle v. City of Everett*, 114 Wn.2d 88, 97, 786 P.2d 253 (1990) (single assessment may be used if owner has combined lots and put them to unified use).

ANALYSIS

A. Special Benefit

The issue is whether the trial court erred when annulling the ULID assessment and concluding the County had failed to meet its burden of showing the Douglasses' properties were specially benefited by the later ULID No. U966 improvements.

 Our review, like the superior court, is limited to the record of proceedings before the Board of County Commissioners. *Bellevue Assocs. v. City of Bellevue*, 108 Wn.2d 671, 674, 741 P.2d 993 (1987). We look "at the propriety of the process and [do] not undertake an independent evaluation of the merits." *Id.* The action of the Board of County Commissioners "is presumed legal and proper; the party challenging the assessment has the burden of proving its incorrectness." *Id.* Once the property owner has presented expert appraisal evidence demonstrating the property was not benefited, the burden shifts to the County to prove the property was benefited. *Bellevue Plaza, Inc. v. City of Bellevue*, 121 Wn.2d 397, 404, 851 P.2d 662 (1993).

The Douglasses presented testimony from Mr. Ward that ULID No. U966 "adds absolutely no special benefit to the four Douglass properties." BR at 791. His calculation method was the difference between the fair market value of the property immediately after the special benefit has attached and the value before it attached. He evaluated ULID No. U966 separately from CRP 2125. The Douglasses concede they were benefited by CRP 2125, but they compensated the County for that benefit.

The County measured "special benefit" differently. Mr. Barrett calculated "special benefit" as the difference between the value of the property with sewer and the value of the property without sewer. CP at 65.

 An assessment will be upheld "unless it stands on a fundamentally wrong basis or the assessing body acts arbitrarily or capriciously." *Bellevue Assocs.*, 108 Wn.2d at

675. Fundamentally wrong basis " 'refers to some error in the method of assessment or in the procedures used by the municipality.' " *Id.* (quoting *Abbenhaus v. City of Yakima*, 89 Wn.2d 855, 859, 576 P.2d 888 (1978)). The parties do not discuss arbitrary or capricious action. If fundamental error exists, " 'the court is limited to nullification or modification only of those parcel assessments before it.' " *Id.* (quoting *Abenhaus*, 89 Wn.2d at 859).

■ "The court may disregard the opinion of an expert if he [or she] has proceeded on a fundamentally wrong basis." *Bellevue Plaza*, 121 Wn.2d at 411 (citing *Doolittle v. City of Everett*, 114 Wn.2d 88, 106, 786 P.2d 253 (1990)). The Douglasses allege the County's expert wrongly measured special benefits as the value of the property with and without sewer.

■ Our Supreme Court has set forth the method for calculating special benefits. Special benefits are measured as " 'the difference between the fair market value of the property immediately after the special benefits have attached and its fair market value before they have attached.' " *Bellevue Assocs.*, 108 Wn. 2d at 675 (quoting *Heavens v. King County Rural Library Dist.*, 66 Wn.2d 558, 564, 404 P.2d 453 (1965)).

■■ The County argues the 1987 sewerage developer connection agreement entered into by the County and Harlan Douglass redefines "special benefits" as the value of the property before it connected to the County's sewer system and after ULID No. U966 was formed. Since Lanzce Douglass did not sign a similar agreement, his property is exempt from the County's argument.

The connection agreement provides: " '[S]pecial benefits' accruing to the properties as a result of the connection to the County's sewerage system at the present time, will establish the 'special benefits' accruing to the properties if a Utility Local Improvement District . . . is established and includes such properties." BR at 487-88. The agreement also states: "[W]hen and if a Utility Local Improvement District is formed . . . which ULID includes all or a portion

of said properties . . . 'special benefits' . . . will be based upon the benefits accruing to such property, at the time the County allows the Developer to use the County's sewerage facilities." BR at 493. Both clauses concern a ULID that includes the developer's property.

Here, the parties stipulate the ULID improvements did not directly affect the Douglasses' properties. A property within a ULID cannot be charged for a particular improvement simply by virtue of being within the boundaries of a ULID. " 'Only that portion of the costs of the local improvement which is of special benefit to the property can be levied against the property.' " *Bellevue Assocs.*, 108 Wn.2d at 676 (quoting *In re Schmitz*, 44 Wn.2d 429, 433, 268 P.2d 436 (1954)).

The 1987 connection agreement applies to ULID improvements affecting Harlan and Maxine Douglasses' properties. ULID No. U966 does not. No special benefit accrues to the Douglasses' properties when the properties do not connect to any of the ULID No. U966 improvements and the sanitary flow from the Douglasses' properties does not enter any portion of the improvements. Mr. Barnett's method of calculating special benefits as the value of the property with and without sewer is fundamentally wrong. Mr. Ward's remaining testimony indicates ULID No. U966 "adds absolutely no special benefit to the four Douglass properties." BR at 791. Based on this, the County failed to meet its burden of showing the property was specially benefited. Without special benefit, the assessment must be nullified.

The County next contends the trial court improperly considered the absence of sewer connection when deciding no special benefit existed. The County argues connection is irrelevant. It cites *Stewart v. City of Chehalis*, 53 Wash. 213, 216, 101 P. 841 (1909) to support its argument.

First, *Stewart* was decided before our legislature passed extensive legislation regarding sewer special assessments. Indeed, the *Stewart* court discussed the need for such legislation. *Stewart*, 53 Wash. at 216. Second, the sewer

improvements in *Stewart* were directly in front of the assessed property and our Supreme Court assumed the property would connect in the future. *Id.*

Here, the Douglasses will not utilize the ULID No. U966 improvements; no evidence indicates they will ever connect to the improvements. Further, none of the sanitary flow from the Douglasses' properties enters into any portion of the improvements. These facts are significant in evaluating the fair market value of the property before and after the improvements. While special benefits may be difficult to visualize, particularly in an indirect benefits case, the trial court properly considered Mr. Ward's opinion regarding lack of connection and fair market value when deciding whether special benefits existed here. The trial court properly decided no special benefit existed.

## B. Retroactivity of ULID Assessment

The issue is whether the trial court erred in concluding the older CRP 2125 facilities and the newer ULID No. U966 facilities did not combine to form a single, integrated sewerage system for assessment purposes. Essentially, the Douglasses argue retroactivity; the County's assessments wrongly took into account improvements made prior to the creation of ULID No. U966.

RCW 36.94.240 permits counties to levy a special assessment "against the property situated within the local district in proportion to the special benefits *to be derived* by the property therein from the improvement." (Emphasis added.) The language "to be derived" is prospective. RCW 36.94.240. As the trial court correctly pointed out, adding 1987 costs into the 1996 ULID would make the ULID retrospective. Moreover, Washington cases addressing ULID improvements just discuss improvements made *after* the creation of the ULID. *See Bellevue Plaza*, 121 Wn.2d at 400; *Bellevue Assocs.*, 108 Wn.2d at 672; *Hansen v. Local Improvement Dist. No. 335*, 54 Wn. App. 257, 258, 773 P.2d 436 (1989).

The County cites *In re Improvement of California Avenue*, 30 Wn.2d 144, 190 P.2d 738 (1948), to support its contention ULID No. U966 is not retrospective because the CRP 2125 facilities and the ULID No. U966 facilities are part of an integrated sewerage system. In *In re California Avenue*, a local improvement district was formed for the purpose of placing sidewalks along both sides of California Avenue in Everett. *Id.* at 145. As part of the project several trees had to be removed. *Id.* Owners on the south side of the road were assessed 95 percent of the cost of tree removal since 95 percent of the trees were on their side. *Id.* at 146. Our Supreme Court annulled the special assessments, holding "the cost of improving California [A]venue must be considered as a whole." *Id.* at 148. The court reasoned, "the improvement is of equal benefit to the lots on the north and the lots on the south side of California [A]venue." *Id.*

*In re California Avenue* is distinguishable. First, based on our first holding, the Douglasses' properties are not equally benefited. The ULID No. U966 improvements do not specially benefit the Douglasses' properties. Second, we have the benefit of RCW 36.94.240, enacted after *In re California Avenue*, which states assessments must be levied "in proportion to the special benefits." If there is no special benefit, there can be no assessment. The Douglasses paid for the CRP 2125 benefits in GFCs. Since CRP 2125 provided special benefits and ULID No. U966 did not, it cannot be said they are part of an integrated sewerage system for assessment purposes.

## C. Notice

The issue is whether the trial court erred when deciding the Douglasses were not given adequate notice CRP 2125 expenditures would be included in ULID No. U966 assessments.

Before forming a ULID by resolution, RCW 36.94.230 requires the county legislative authority to first create a "resolution declaring its intention to order such

improvement, setting forth the nature and territorial extent of such proposed improvement." This resolution of intention must be published and mailed to each of the property owners. RCW 36.94.230. Here, the resolution of intention did not expressly state that CRP 2125 expenditures would be included in ULID No. U966. The subsequent resolution formally creating the ULID also did not mention CRP 2125 costs.

The County, however, argues the resolution warns that ULID No. U966 improvements will include "other work as may be necessary in conjunction with the development of this utility local improvement district." BR at 523. It argues this is enough to include CRP 2125 improvement costs in its assessments. It supports this argument with testimony from the Spokane County Division of Utilities' project manager who testified the CRP 2125 improvements are an integral part of the ULID No. U966 improvements. The project manager also testified if the main sewer line constructed under CRP 2125 was not there, it would have to be built under ULID No. U966. As discussed above, the CRP 2125 improvements and the ULID No. U966 improvements are not part of an integrated system for assessment purposes. It is well established under Washington law "[b]enefits assessed must be confined to the improvement ordered." *Union Trust Co. v. Carnhope Irrigation Dist.*, 132 Wash. 538, 550, 232 P. 341, *aff'd*, 132 Wash. 538, 234 P. 277 (1925).

Further, the language in the ULID No. U966 resolution is prospective. It refers to other work that "may be necessary." It does not refer to work that *was necessary*, as would be the case if the resolution were referring to CRP 2125 improvements.

The County argues the 1987 connection agreement provided notice of future ULID assessments. However, the agreement merely gives notice that if Harlan and Maxine Douglasses' properties are specially benefited by future ULID improvements they would be assessed. As discussed above, no special benefit is shown here. The Douglasses

were not given notice that CRP 2125 charges would be included in the ULID No. U966 assessments.

## D. Other Issues

First, we acknowledge, but do not decide, the issue and arguments regarding whether ULID No. U966 required payments overlapped with the CRP 2125 GFC payments. The County argues one can exist with the other; they are not mutually exclusive.

We note three types of funding mechanisms mentioned in this record: a monthly user charge for operation and maintenance, the ULID, and a GFC. A GFC under SCC 8.52.020 and .030 includes charges for improvements that benefit all the system's users and cannot be attributed to any particular property. RCW 36.94.020 authorizes counties to construct and operate systems of sewerage and charge users for the cost. A county may charge a special assessment solely against a property specifically benefited by construction of a corresponding improvement. *Tapps Brewing, Inc. v. City of Sumner*, 106 Wn. App. 79, 84, 22 P.3d 280 (2001) (citing *Teter v. Clark County*, 104 Wn.2d 227, 230, 704 P.2d 1171 (1985)).

As noted, ULID No. U966 provides no special benefit to the Douglasses' properties. Moreover, assessments included in the ULID for CRP 2125 improvements are retrospective and levied without proper notice to the Douglasses. These issues are dispositive. Thus, while noting the risk for overlap within the coexisting funding frameworks, we do not need to decide whether a GFC in connection with a CRP and an assessment in a later ULID are, or were, here mutually exclusive means of funding Spokane County's sewers.

Second, in their response brief, the Douglasses argue inclusion of the CRP 2125 improvements in ULID No. U966 would violate United States Treasury regulations governing tax exempt bonds, citing 26 CFR § 1.150-2(d). This section of the code concerns general operating rules for

reimbursement expenditures for local bonds. Both the Board of County Commissioners and the superior court found the Douglasses' argument outside the realm of the current issue. The County did not assign error to this issue and the Douglasses did not specifically request cross-review; therefore, we decline to discuss United States Treasury regulations.

Affirmed.

SWEENEY and KURTZ, JJ., concur.