77 P.3d 354 (2003)
TIFFANY FAMILY TRUST CORPORATION, Appellant.
v.
CITY OF KENT, a municipal corporation, Respondent.
No. 51184-0-I.
Court of Appeals of Washington, Division 1.
August 11, 2003.
Publication Ordered September 23, 2003.
*355 Richard Michael Peterson, Stephen Howard Roos, Hillis Clark Martin & Peterson, Seattle, WA, for Appellant.
P. Stephen Di Julio, Attorney at Law, Ramsey Ramerman, Foster Pepper & Shefelman, Seattle, WA, for Respondent.
BECKER, C.J.
Property belonging to appellant Tiffany was included in a Local Improvement District and was assessed a sum Tiffany considers so disproportionate to the benefit received as to be a taking and a violation of substantive due process. But the assessment must be regarded as conclusive because Tiffany did not timely appeal it in the manner provided by statute. Judicial review is available only if there was a jurisdictional defect in the LID proceedings. Neither the City's manner of giving notice, nor the rationale by which the property was included in the LID, amounted to a jurisdictional defect. And Tiffany's effort to gain review through a federal civil rights cause of action is another form of prohibited collateral attack. Accordingly, we affirm the order dismissing Tiffany's suit.
Tiffany Family Trust Corporation owns a five-acre property in the City of Kent. In 1986 the property was zoned limited industrial, meaning that up to 25 percent of any industrial development could be devoted to retail, office, and service uses. Such uses could exceed 25 percent only by conditional use permit. In 1986, Tiffany applied for a conditional use permit allowing up to 35 percent of a seven-building industrial development to be occupied by retail, office, and service uses.
It was estimated that Tiffany's conditional use would generate an additional 17 peak hour vehicle trips impacting a nearby intersection. The Kent Hearing Examiner approved the conditional use permit effective *356 October 15, 1986 subject to the condition that Tiffany participate in paying for street improvements:
Participation in the South 192nd/196th Street corridor project based upon an additional 17 p.m. peak hour trips generated by the facility as a result of the conditional use permit and impacting the intersection of East Valley Highway and S. 212th Street.
Tiffany and the City entered into an environmental mitigation agreement detailing that Tiffany's obligations as a developer would include paying a "proportionate share of all costs associated with" specific street improvements. Tiffany's proportionate share of the actual cost of the improvements was "currently estimated" in the agreement as $1,400 per trip for each of the 17 peak hour trips Tiffany's development was expected to generate, or a total of $23,800.
According to the agreement, Tiffany did not have to pay its share immediately. "The final cost shall be based on actual expenses incurred at the time said improvements are constructed." The agreement provided that payment would be pursuant to the formation of a Local Improvement District (LID). Tiffany agreed "to participate in and not protest the formation of" an LID that would incorporate the anticipated improvements. Tiffany also agreed that its property would be specially benefited by the improvements and its value increased thereby, in an amount "not less than" $23,800. The agreement provided that the minimum benefit of $23,800 would increase in proportion to any increase in the consumer price index until the final LID assessment roll was approved.
The agreement included the City's promise to notify Tiffany at least 180 days before the public hearing on the formation of the LID if it intended to use the "peak hour trips" generation method in establishing the assessment amounts. Tiffany would then have 120 days to submit a traffic study which, if concurred in by the City, would supersede the original estimate of 17 additional peak hour trips.
Tiffany and the City of Kent signed the environmental mitigation agreement in 1987. The City entered into over 100 agreements with other landowners requiring participation in the LID as a condition to development, most of which were in the form of environmental mitigation agreements.
In 1993, in an unrelated case, the Washington Supreme Court held that the "trip generation" formula for distributing costs was not a proper method of determining LID assessments because it bore no relationship to the special benefits conferred upon on property being assessed. Bellevue Plaza, Inc. v. City of Bellevue, 121 Wash.2d 397, 418, 851 P.2d 662 (1993). In 1998, the City of Kent formed the LID anticipated by its agreement with Tiffany. With respect to Tiffany's property and other properties subject to similar environmental mitigation agreements, the City appraiser did not use the "trips generation" methodology and instead undertook to determine their fair market values before and after the special benefit attached.[1]
The City appraiser's methodology took into account the fact that the agreements had allowed the owners to develop their properties without immediately paying for specific infrastructure improvements and without having to wait for the formation of the LID. On the other hand, the appraiser also took into consideration the fact that the financial obligations imposed by the mitigation agreements tended to depress the properties' sales prices. Based on this analysis, the appraiser determined that the appropriate assessment against Tiffany's property was $364,939 (increase in value from $1,787,500 to $2,234,400, less a downward adjustment of 18 percent). This assessment was about 10 times the amount that had been estimated as Tiffany's proportionate share of the cost of improvements, even after adjusting for inflation.
Certificates of mailing in the City's records show that the City sent notices to Tiffany throughout the proceedings by regular mail at the Kirkland address listed on the county assessor's rolls and in the environmental mitigation agreement. Although Tiffany claims it did not receive any such notices, a statute *357 provides that the mailing of notices "shall be conclusively proved" by such certificates. RCW 35.44.180. Tiffany did not attend any hearings on the formation of the LID nor did it protest the assessment derived from the City's appraisal. The City confirmed the assessment roll on January 19, 1999. The City mailed notice of the final assessments by certified mail. When the assessment mailed to Tiffany was returned unclaimed, the City mailed notice of the assessment to the development's property manager, and then, on the property manager's advice, to an address in Tacoma. In July 1999, the City sold the bonds that were secured by the assessments.
Tiffany claims to have learned of the LID assessment coincidentally in April 1999, through a supplemental title report ordered in connection with refinancing. In February 2000, Tiffany filed suit in superior court alleging that the assessment was an unlawful taking and that it violated substantive and procedural due process. Tiffany asserted the same claims as civil rights violations under 42 U.S.C. § 1983. The suit asked the court to nullify the assessment and order the City to pay just compensation and damages.
Tiffany filed a motion for summary judgment. The City responded with a motion to dismiss under CR 12(b)(1) (lack of jurisdiction) and CR 56 (summary judgment). The trial court granted the City's motion to dismiss. The court concluded that there were no jurisdictional defects in the assessment proceedings; therefore, there was no basis for allowing a collateral attack upon the assessment. Tiffany appeals. The issues raised are purely questions of law, which we review de novo.
Challenges to LID proceedings are governed by statute. "All objections to the confirmation of the assessment roll shall state clearly the grounds of objections. Objections not made within the time and in the manner prescribed in this chapter shall be conclusively presumed to have been waived." RCW 35.44.110. Once an assessment is final, it is conclusive, and cannot be contested or questioned in any further proceeding, unless the party challenging the assessment followed the statutory procedures for making objections and filing an appeal:
Whenever any assessment roll for local improvements has been confirmed by the council, the regularity, validity, and correctness of the proceedings relating to the improvement and to the assessment therefor, including the action of the council upon the assessment roll and the confirmation thereof shall be conclusive in all things upon all parties. They cannot in any manner be contested or questioned in any proceeding by any person unless he filed written objections to the assessment roll in the manner and within the time required by the provisions of this chapter and unless he prosecutes his appeal in the manner and within the time required by the provisions of this chapter.

RCW 35.44.190 (emphasis added). This statutory provision is the reason why Douglass v. Spokane County, 115 Wash.App. 900, 907-08, 64 P.3d 71 (2003), cited by Tiffany as supplemental authority, does not apply. The appellant in that case participated in the LID proceedings, appealed in the manner provided by statute, and was thereby entitled to argue that the assessment stood upon "a fundamentally wrong basis". Douglass, 115 Wash.App. at 907, 64 P.3d 71. That argument is not available to Tiffany because Tiffany did not participate in the LID proceedings.
Tiffany acknowledges that a direct appeal from the confirmation of the assessment roll is not available, because Tiffany did not challenge the LID assessment through the statutory objection and appeal procedures provided in RCW Ch. 35.44. Tiffany contends, however, that the courts have broad "inherent or equity jurisdiction" to review LID assessments other than through statutory appeals. This is not so. If a property owner fails to appeal a LID assessment in the manner prescribed by statute, the owner can attack the assessment collaterally only if there is a jurisdictional defect in the LID proceedings. Patchell v. City of Puyallup, 37 Wash.App. 434, 441-42, 682 P.2d 913 (1984).
There are four bases upon which a property owner may assert a jurisdictional *358 defect: (1) where there is a violation of a constitutional right in the assessment proceedings, such as lack of notice; (2) where the improvement does not benefit the public; (3) where the improved property is not public property; and (4) where the assessment roll includes property not subject to assessment. Little Deli Marts, Inc. v. City of Kent, 108 Wash.App. 1, 5, 32 P.3d 286 (2001). See also Philip A. Trautman, Assessments in Washington, 40 Wash. L.Rev. 100, 126-27 (1965). Washington courts strictly construe such jurisdictional defects. Little Deli Marts, 108 Wash.App. at 5, 32 P.3d 286.
Violation of the due process right to notice is an example of a jurisdictional defect permitting a collateral attack. Patchell, 37 Wash.App. at 442, 682 P.2d 913. Tiffany claims that the City's various assessment notices failed to satisfy constitutional due process standards.
The City of Kent followed the statutory procedures for notice of assessment hearings. The City published the required notices and legislation concerning the LID in the City's legal newspaper and posted the proposed assessment roll on the index of local improvement assessments. Certificates of mailing show that the City also mailed each statutorily required notice to Tiffany at the address listed on the county assessor's rolls and in the environmental mitigation agreement.
Tiffany argues that the statutory methods of giving notice are not, under the circumstances, sufficient to satisfy due process. Tiffany asks us to impose an additional requirement to use certified mail because its use would have significantly increased the likelihood of Tiffany receiving actual notice.
Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Ordinary mail is widely recognized as a method reasonably calculated to apprise property owners of hearings on assessments that are proposed to be levied on their property. See 14 E. McQuillin, The Law of Municipal Corporations, § 38.103 (3d ed.1998). Washington's law is consistent with this rule, as established by Pratt v. Water Dist. 79, 58 Wash.2d 420, 424, 363 P.2d 816 (1961), a case recognized in McQuillin. According to Pratt, a statute that requires notice by mail to record owners who appear on the tax rolls satisfies Mullane.
Tiffany argues for a further analysis balancing the factors set forth in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). But our Supreme Court's more recent cases have given no indication that Mathews would compel a revision of Pratt's acceptance of ordinary mail as constitutionally sufficient notice of LID proceedings. See, e.g., Wenatchee Reclamation Dist. v. Mustell, 102 Wash.2d 721, 726, 684 P.2d 1275 (1984) (notice by publication and posting is constitutionally inadequate to notify a property owner of a special assessment foreclosure; "personal service or mailed notice is required") (emphasis added). We conclude the statute authorizing the City to use regular mail to send the notices satisfies due process.
Tiffany further contends that even if regular mail is adequate in the usual case, in this case registered or certified mail was required under the terms of the environmental mitigation agreement. The agreement provided that "Any notice or demand required or permitted to be given under this agreement shall be sufficient to be given in writing and if sent by registered or certified mail, return receipt requested, to the address" of the other party. Tiffany argues that this language applied to notices of the LID proceedings and added to the City's due process burden. However, a City cannot be bound to additional notice conditions or requirements that are not required by statute. See Alexander v. City of Tacoma, 35 Wash. 366, 372, 77 P. 686 (1904) (public policy forbids a rule that an owner is due more notice than is statutorily provided for, despite a public official's promise). And even if this were not so, we would not be inclined to hold that the agreement contained a promise that the City would use registered or certified mail to send notice of the LID proceedings. The promise applied only to such notices as *359 were "required or permitted to be given under this agreement." The only notice mentioned in the agreement was the notice the City was to give if it intended to use the trip generation method to distribute the assessments:
Where peak hour trip generation is utilized as the method of distributing the L.I.D. assessments, the City shall notify the developer of same at least 180 calendar days prior to the public hearing on the formation of the L.I.D. Upon said notification, the developer shall have 120 days to submit to the City a traffic study.... Failure to submit a certified traffic study in accordance with the time limit noted herein constitutes forfeiture of a right to alter, change, reduce, or modify the peek hour trip total established in Section 2.1.
That provision for notice was never triggered because, as it turned out, trip generation was not a legal methodology and was not used.
In summary, the City's failure to use registered or certified mail did not create a jurisdictional defect. Use of regular mail satisfied Tiffany's due process right to adequate notice.
Another ground on which to assert a jurisdictional defect is that the assessment roll includes property not subject to assessment. Tiffany argues that its property was not subject to assessment, reasoning that the property is a considerable distance from the LID improvements; that other properties similarly distant were not subjected to assessment; and that the only basis for including Tiffany's property in the LID was the appraiser's assumption that without the LID improvements, the City would not or could not have issued the 1986 conditional use permit. This assumption, according to Tiffany, was mistaken.
Assuming, without deciding, that the appraiser's premise was mistaken, Tiffany's property was still subject to assessment. The general rule concerning assessment in Washington is that property covered by the general terms of a statute authorizing assessment is subject to assessment. State ex rel. Renton v. Commercial Waterway Dist. 2, 152 Wash. 523, 529, 278 P. 423 (1929). Under RCW 35.44.010, all property "within the limits of a local improvement district" is subject to assessment. Right or wrong, the appraiser's rationale placed Tiffany's property within the limits of the LID. Indeed, Tiffany concedes that the environmental mitigation agreement waived Tiffany's right to protest the formation of the LID.[2] Because Tiffany acceded by agreement to the inclusion of its property in the LID and did not protest when the LID was actually formed, its property was subject to assessment.
Tiffany claims that the large amount of the assessment is so disproportionate to any benefit the property may have received as to be a taking and a violation of substantive due process. But a challenge to an assessment based on lack of benefit or alleged error in valuation is not one that may be raised collaterally. City of Longview v. Longview Cy., 21 Wash.2d 248, 252, 150 P.2d 395 (1944); State ex rel. City of Renton, 152 Wash. at 528, 278 P. 423; see also Philip A. Trautman, Assessments in Washington, 40 Wash. L.Rev. 100, 127 (1965). Indeed, our Supreme Court has explicitly held that such a claim is not a jurisdictional defect:
none but jurisdictional defects in the proceedings will serve to defeat an assessment upon property of an owner who has failed to file objections to the confirmation of the assessment roll. Objections that an assessment was made without regard to benefits, or in excess of benefits, or in excess of actual cost of the improvement, or in excess of charter limitations, are not jurisdictional and will not serve to defeat the assessment.
City of Longview, 21 Wash.2d at 252, 150 P.2d 395. This well-established rule cannot be evaded by attempting to recast a claim of disproportionality, or even a claim of complete lack of benefit, as a jurisdictional defect in the assessment proceedings.
Tiffany vigorously argues that the amount of the assessment is subject to analysis as a taking because it is actually a mitigation payment or "exaction" for the public impacts of the private development undertaken years *360 before the LID. Pertinent to this argument, Tiffany cites as supplemental authority a recent United States Supreme Court decision indicating that money is private property subject to the Takings Clause. Brown v. Legal Foundation of Washington, 538 U.S. 216, 123 S.Ct. 1406, 1419, 155 L.Ed.2d 376 (2003). This may have been a suitable argument to make during the assessment proceedings. It is not a proper argument in a collateral attack. The court properly rejected Tiffany's taking and substantive due process claims.
Tiffany contends that the Takings Clause of the Washington Constitution provides an alternative independent basis to bring a takings claim against the City. See Wash. Const. art I, § 16. Because Tiffany has not provided argument on this issue, we decline to address it. See RAP 10.3(a)(5).
Finally, Tiffany contends that, independent of statutory procedures for challenging the assessment, an action under 42 U.S.C. § 1983 is available to challenge the constitutionality of the assessment. Tiffany cites no authority supporting this contention. The relief sought by Tiffany in the § 1983 claims is the same relief provided by the statutory procedures that Tiffany did not follow. Unless it is shown that statutory procedures for challenging assessments do not satisfy due process requirements, one who fails to utilize those procedures has no cognizable claim for injury under 42 U.S.C. § 1983, even if it can belatedly prove that an assessment exceeds special benefits. See City of Grand Prairie v. Sisters of Holy Family of Nazareth, 868 S.W.2d 835, 844-46 (Tex.App.1993). If the assessment is a "taking," it is a taking because it exceeds the special benefits conferred. Hargreaves v. Mukilteo Water Dist., 43 Wash.2d 326, 332, 261 P.2d 122 (1953). This issue may be raised in statutory proceedings. See, e.g., Bellevue Plaza, Inc. v. City of Bellevue, 121 Wash.2d 397, 403, 851 P.2d 662 (1993). Thus, Tiffany does not have a cognizable § 1983 claim.
In summary, having reviewed the record de novo, we find no error of law. The order dismissing Tiffany's suit must be affirmed.
The City argues that this is a frivolous appeal and requests attorney fees as sanctions under RAP 18.9(a). An appeal is frivolous when, considering the record in its entirety and resolving all doubts in favor of the appellant, no debatable issues are presented on which reasonable minds might differ. Olson v. City of Bellevue, 93 Wash.App. 154, 165, 968 P.2d 894 (1998). We do not find that standard to be met, and accordingly decline the City's request for attorney fees.
Affirmed.
SCHINDLER and KENNEDY, JJ., concur.
NOTES
[1] This is the measure of the special benefit of the improvement to the assessed property. Bellevue Assocs. v. City of Bellevue, 108 Wash.2d 671, 675, 741 P.2d 993 (1987).
[2] Brief of Appellant at 29, n. 13.